Ronald **KROPTAVICH**, Appellant,

v.

**PENNSYLVANIA POWER AND LIGHT COMPANY,**
Appellee.

Ronald Kroptavich, Appellee,

v.

**Pennsylvania Power and Light Company, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 2000.
Filed March 26, 2002.

Timothy G. Lenahan, Scranton, for Pennsylvania Power and Light Co.

## 1052

Peter G. Loftus, Waverly, for Kroptavich.

BEFORE: CAVANAUGH, STEVENS, and HESTER, JJ.

STEVENS, J.:

¶ 1 Appellant/Cross–Appellee, Ronald Kroptavich, appeals from an order of the Court of Common Pleas of Lackawanna County granting summary judgment to Appellee/Cross–Appellant, Pennsylvania Power and Light Company ("PPL"), on both counts of Kroptavich's complaint, relating to his dismissal from the company. We hold that the coordinate jurisdiction rule did not bar the order entering summary judgment in favor of PPL, and we affirm the entry of summary judgment against Kroptavich, albeit on different grounds.

¶ 2 On May 16, 1966, Kroptavich accepted a position with PPL as a line crew laborer. In the ensuing years, Kroptavich earned a series of promotions and eventually assumed the management position as one of PPL's Multi–Crew Foremen. As a Multi–Crew Foreman, Kroptavich was responsible for supervising workers assigned to install or maintain power lines and equipment.

¶ 3 The present controversy arose from Kroptavich's acceptance of a 1994 Christmas gift of $200.00 cash from the owner of Neal–Lynn Construction, a company routinely subcontracted by PPL to provide labor crews for various projects. In January, 1995, when PPL supervisors asked Kroptavich whether he had accepted any money from Neal–Lynn in contravention of PPL's "Procurement Practices Manual" and "Standards of Integrity Policy Manual," Kroptavich replied that he had been given a $200.00 gift certificate but returned it. However, at a subsequent meeting with internal auditors investigating alleged Neal–Lynn gift-giving, Kroptavich admitted that he had, in fact, accepted a $200.00 cash gift. In light of his admission, Kroptavich was given the option of either termination or resignation. Kroptavich, 51 years of age at the time, chose the latter. Shortly thereafter, three existing PPL employees, ranging in age from 50 to 53 years of age assumed Kroptavich's duties.

¶ 4 After exhausting administrative avenues, Kroptavich filed a complaint on or about October 17, 1996, enumerating two counts, namely, that his forced resignation was a violation of the Pennsylvania Human Relations Act's [1] ("PHRA") prohibition on age discrimination and that PPL constructively discharged him. Specifically, Appellant averred that younger employees who accepted gifts were not discharged but were given oral or written reprimands only. He further claimed that he was effectively discharged for violating policy manual provisions without being afforded access to the manual's grievance procedures.

¶ 5 After filing its answer to the complaint but prior to depositions and discovery, PPL filed a motion for partial summary judgment in which it argued that the PHRA both preempted Kroptavich's constructive discharge claim as a matter of law and did not permit a jury trial. Denying PPL's motion, the Honorable James M. Munley ruled that the PHRA did not preempt Kroptavich's constructive discharge claim because the claim was "based not on public policy against discrimination but rather on [Kroptavich's] alleged selec-

---

1. 43 Pa.S. § 951 et seq. Relevant to the present appeal, Section 955 provides:

It shall be an unlawful discriminatory practice...(a) For any employer because of the...age...of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual. 43 Pa.S. § 955.

tive treatment and denial of PP & L's appeal process." *See* Order 7/14/97 at 3.

¶ 6 The parties thereafter conducted discovery, and Kroptavich was deposed. At the conclusion of the discovery period, PPL filed another motion for summary judgment, this time for the dismissal of both counts against it. PPL argued that Kroptavich failed to establish two elements necessary to a *prima facie* case of age discrimination, namely, that he remained qualified for the job despite knowingly violating policy and that PPL replaced him with someone significantly younger than he. PPL also argued that, assuming *arguendo* a *prima facie* case were made, PPL met its burden of providing a nondiscriminatory explanation for termination which Kroptavich failed to rebut as pretextual.

¶ 7 Presiding over the motion was the Honorable S. John Cottone. After receiving briefs and hearing oral argument on the matter, Judge Cottone granted PPL's motion and entered an order dismissing Kroptavich's complaint. Judge Cottone first found that the coordinate jurisdiction rule did not bar his review because discovery and depositions had occurred after Judge Munley's order and, thus, for the first time, provided the court with a factual record upon which to rule. With regard to the count of age discrimination under the PHRA, Judge Cottone reserved opinion as to whether Kroptavich's conduct made him unqualified to continue at his supervisory position. Rather, Judge Cottone based his ruling on Kroptavich's failure to establish that he was replaced with a significantly younger worker. An alternative basis for Judge Cottone's ruling was his finding that, assuming a *prima facie* case had been made, PPL had stated a legitimate reason for discharge which Kroptavich failed to rebut as mere pretext for discrimination.

¶ 8 Nor could Kroptavich's denial of an appeals process defined in the "Standards of Integrity" manual act as a basis for a constructive discharge claim, Judge Cottone found, because one could not reasonably infer from the manual's language that PPL intended to supplant Pennsylvania's "employment at-will" presumption. This timely direct appeal and cross-appeal followed.

¶ 9 Kroptavich challenges the trial court's entry of summary judgment with four questions raised for our consideration:

I. WHETHER THE COURT CAN OVERRULE A JUDGE OF THE SAME COURT IN VIOLATION OF COORDINATE JURISDICTION?

II. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S [AGE] DISCRIMINATION [CLAIM]?

III. WHETHER THE CONSTRUCTIVE DISCHARGE CLAIM MUST STAND?

IV. WHETHER THERE ARE SUBSTANTIVE DEFECTS WHICH PRECLUDE THE USE OF CERTAIN DOCUMENTS ATTACHED TO THE DEFENSE MOTION?

¶ 10 Our scope of review of a trial court order granting summary judgment is plenary. *Weishorn v. Miles–Cutter,* 721 A.2d 811 (Pa.Super.1998). In reviewing the order, we must examine the record in the light most favorable to the nonmoving party and determine whether the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* We will overturn a lower court's entry of summary judgment "only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 661 A.2d 397, 399 (1995).

¶ 11 In his first challenge against the entry of summary judgment, Kroptavich argues that Judge Cottone revisited issues already rejected in Judge Munley's order denying PPL's earlier motion for summary judgment, thereby violating the coordinate jurisdiction rule. We find no such violation of the coordinate jurisdiction rule where the motion before Judge Cottone raised different legal issues from those raised in the motion before Judge Munley.

■■■ ¶ 12 This Court has recognized that under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not ordinarily overrule each other's decisions. *Herczeg v. Hampton Township Municipal Authority,* 766 A.2d 866 (Pa.Super.2001). The rule is one of "sound jurisprudence based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency." *Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). This rule applies to civil cases and it falls within the "law of the case" doctrine, which instructs that:

> [A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that:...upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Riccio v. American Republic Ins. Co.,* 550 Pa. 254, 261–262, 705 A.2d 422, 425 (1997).

■ ¶ 13 Here, we find that the law of the case doctrine does not apply where it is clear that the two orders in question addressed different legal questions. PPL's first motion for summary judgment sought judgment only on the constructive discharge count, which, PPL argued, the PHRA count preempted as a matter of law. Judge Munley, noting that the PHRA indeed bars review of discrimination-based constructive discharge claims, ruled that Kroptavich's constructive discharge claim survived preemption because it was based not on discrimination *per se* but on the allegation that PPL required Kroptavich to resign without the benefit of an internal appeal process as outlined in PPL's policy manual.

¶ 14 In contrast, PPL filed its second motion for summary judgment on both the age discrimination claim and the constructive discharge claim on the argument that Kroptavich failed to produce facts during discovery necessary to each cause of action. Judge Cottone agreed that Kroptavich supported neither claim with sufficient facts and granted summary judgment.

¶ 15 Thus presented with a motion completely different from that presented earlier to Judge Munley, Judge Cottone did not reopen questions or alter earlier decisions. His entry of summary judgment, therefore, was not at odds with the law of the case doctrine/coordinate jurisdiction rule.

¶ 16 Kroptavich's second issue asks this Court to determine if Judge Cottone erred in finding that Kroptavich failed to support his claim of age discrimination under the PHRA with evidence sufficient to present a jury question. Our review shows the trial court properly granted summary judgment on the age discrimination claim.

¶ 17 Summary judgment is proper when, after completion of discovery relevant to the motion, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.Civ.P. 1035.2(2). In a Rule 1035.2(2) scenario, "the record con-

tains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to a jury." Pa.R.Civ.P. 1035.2(2), Note.

¶ 18 As noted above, a cause of action based on age discrimination in Pennsylvania is found in the PHRA. Generally, claims brought under the PHRA are analyzed under the same standards as their federal counterparts. Therefore, though not binding on our state courts, federal court interpretations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, serve to inform this Court's interpretations of the PHRA. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971 (3d Cir.1998); *Fairfield Township Volunteer Fire Co. v. Commonwealth*, 530 Pa. 441, 609 A.2d 804 (1992); *Jacques v. Akzo International Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748 (1993).

¶ 19 Established for Title VII cases, where, as here, direct evidence of discriminatory treatment is lacking, is "an allocation of the burden of production and an order for the presentation of proof" according to which a court may assess a plaintiff's indirect evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Davis v. Tammac Corp.*, 127 F.Supp.2d 625 (M.D.Pa.2000). This Title VII burden-shifting framework as developed in *McDonnell Douglas* is a three-part one. First, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Jacques, supra.* The burden on the plaintiff of presenting a *prima facie* case under *McDonnell Douglas* is "minimal." *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir.2000). If the plaintiff cannot meet this minimal burden, the employer is entitled to judgment as a matter of law.

*See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 n. 4 (3d Cir.1999).

¶ 20 If the plaintiff does establish a *prima facie* case, a presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Reeves, supra; Jacques, supra.* The employer's burden in this second part is one of production, not persuasion, and thus involves no credibility assessment. *Reeves, supra.* If the employer articulates a legitimate business explanation, "then the presumption of discriminatory intent created by the employee's *prima facie* case is rebutted and the presumption simply 'drops out of the picture.'" *Seman v. Coplay Cement Co.*, 26 F.3d 428, 432 (3d Cir.1994) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

¶ 21 If the employer satisfies its burden of production, the third and final part of the *McDonnell Douglas* framework gives the plaintiff the opportunity to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n. 5 (3d Cir.1998). In the pretext discrimination case, "the employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994).

¶ 22 To survive PPL's motion for summary judgment, therefore, Kroptavich first needed to establish all elements to a *prima facie* case. In *McDonnell Douglas*, a failure-to-hire case involving race, the United States Supreme Court held that a plaintiff could establish a *prima facie* case in a

Title VII action by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [the] complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817.

■ ¶ 23 The *McDonnell Douglas prima facie* inquiry has been assumed to apply where the claim is one of age discrimination arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.S. § 621 *et seq, See O'Connor v. Consolidated Coin Caterers Corporation,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (assuming the application of the Title VII evidentiary framework set forth in *McDonnell Douglas* to the ADEA context is correct), though in a variant form. This variant standard provides that an age discrimination plaintiff may make a *prima facie* case with evidence showing that the plaintiff at the relevant time: (i) belonged to a protected class, i.e., was at least 40 years of age; (ii) was qualified for the position; (iii) was dismissed despite being qualified; and (iv) suffered dismissal under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone substantially younger. *See O'Connor, supra,* at 313, 116 S.Ct. 1307; *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992).

■ ¶ 24 The lower court applied this particular variant *prima facie* standard to Kroptavich's case. In so doing, the court held that Kroptavich's failure to establish the fourth prong with evidence that he was replaced by a substantially younger person precluded the inference of age discrimina-

tion, thus requiring the dismissal of his case. While we agree that proof of replacement by a substantially younger person may allow for the inference of discrimination, we disagree that an inference of discrimination can be made from no other type of evidence. Here, the crux of Kroptavich's complaint was that PPL treated him differently than it treated similarly situated existing employees who were younger than he, and that PPL had a continued need for someone with his qualifications to perform his work. Therefore, his failure to establish that he was replaced by a significantly younger employee did not logically foreclose the inference that PPL treated him disparately because of his age.

¶ 25 It is well-settled that a major purpose of the *prima facie* inquiry is to eliminate the most common nondiscriminatory reasons for the plaintiff's rejection. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* method for conducting the *prima facie* inquiry provides a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination," but it was "never intended to be rigid, mechanized, or ritualistic." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Indeed, the Supreme Court in *McDonnell Douglas* acknowledged that "facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* at 802 n. 13, 93 S.Ct. 1817.

¶ 26 Federal jurisprudence has, therefore, emphasized that the requirements of the *prima facie* case are flexible, and has repeatedly conditioned the fourth element

on the particular circumstances of each case. For example, in *Torre v. Casio, Inc.,* 42 F.3d 825 (3d Cir.1994), the Third Circuit Court reformulated the typical fourth element as stated in *Gray* to eliminate the need for an age-discrimination plaintiff to prove he was replaced where the employer was engaged in reducing its workforce. The circuit court thus found the fourth element established by evidence that:

> [y]ounger people were not transferred when Torre was transferred, and younger people subsumed his duties. Furthermore, younger people were retained when Torre was terminated. These facts suffice to complete Torre's *prima facie* case: given Casio's concession concerning the other three *Gray* elements, if Torre's proof stopped with the facts above, he would carry his initial burden of 'offering evidence that an employment decision was based on a discriminatory criterion illegal under the Act.' . . . The inference of age discrimination may not be overpowering, but we cannot say that, as a matter of law, it is insufficient.

*Torre,* 42 F.3d at 832–833 (citation omitted).

¶ 27 Five years later, the Third Circuit Court revisited the fourth element in *Pivirotto, supra,* a gender discrimination case, and found error with the district court's requirement that a female plaintiff prove that her former employer replaced her with a man. In following the United States Supreme Court's holding in *O'Connor, supra,* which rejected a fourth element requirement that a plaintiff prove replacement by someone outside of the protected class,[2] the Third Circuit adopted the following reasoning, accepted by the vast majority of circuit courts:

> [E]ven if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees. . . . "[W]hile the attributes of a successor employee may have evidentiary force in a particular case, a complainant can satisfy the fourth prong of her prima [facie] case simply by showing that, as here, the employer had a continued need for 'someone to perform the same work after the complainant left.' "

*Pivirotto,* 191 F.3d at 353–354, (quoting *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 155 (1st Cir.1990) (citations and brackets omitted)).

¶ 28 The decisions of the Third Circuit thus clarify that the fourth element of the *prima facie* case may be satisfied with evidence unrelated to the particular attributes of those who either replace the plaintiff or subsume the plaintiff's duties. Were this not the case, an untenable loophole would exist in discrimination laws permitting employers to impose double standards in the workplace. For example, an employer could dismiss a protected class employee for failing to meet a standard more exacting than is applicable to non-protected class employees, and still avoid liability simply by filling the position with a successor from the same protected class. If left unabated, such an employment policy would perpetuate a double standard whereby protected class employees may always be hired, but retained only on the condition that they perform beyond the expectations put to similarly situated non-protected class employees. *See Pivirotto, supra.* Clearly, the scope of discrimination laws, including the PHRA, must extend to prohibit such disparate treatment.

¶ 29 So, the Third Circuit has recognized that a plaintiff may satisfy the fourth element of a *prima facie* case without evi-

---

**2.** To the extent that this Court in *Jacques* required evidence of replacement with someone outside of the protected class, we understand *O'Connor* to have since rejected this evidentiary requirement.

dence that the replacement employee possessed attributes substantially different from the protected attributes of the plaintiff. This reasoning, adopted by the majority of circuit courts, goes even further to clarify the minimum evidentiary threshold of the fourth element:

> "[A] complainant can satisfy the fourth prong of her prima [facie] case simply by showing that, as here, the employer had a continued need for 'someone to perform the same work after the complainant left.'"

*Pivirotto, supra. See also Keen v. D.P.T. Business School,* 2002 WL 24434, at *4, 2002 U.S. Dist. Lexis 232, at *12 (E.D.Pa. January 9, 2002) (noting that fourth prong in ADEA "failure to promote" case may be satisfied with evidence "that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications") (citation omitted) (emphasis added). Indeed, this minimum threshold accords with the seminal *McDonnell Douglas, supra,* where the Supreme Court held that a plaintiff could establish the fourth element in a failure-to-hire case with evidence that the employer continued to seek a person possessing plaintiff's qualifications.

¶ 30 Therefore, to survive summary judgment on his claim of age discrimination under the PHRA, Kroptavich first needed to establish a *prima facie* case with evidence that he (i) belonged to a protected class, i.e., was at least 40 years of age; (ii) was qualified for the position; (iii) was dismissed despite being qualified; and (iv) suffered dismissal despite PPL's need for someone to perform the same work after he left. We turn, then, to the record to determine whether Kroptavich met his burden.

¶ 31 The parties do not dispute that Kroptavich was at least 40 years old and that PPL continued to need someone to perform Kroptavich's managerial duties. Thus, we find prongs (i) and (iv) satisfied. PPL also argues, however, that a *prima facie* case was lacking because Kroptavich was no longer qualified for his job when he accepted the cash gift and initially denied doing so against PPL's written standards of integrity.

¶ 32 It is settled that "while objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality...is better left to the later stage of the *McDonnell Douglas* analysis." *Weldon v. Kraft,* 896 F.2d 793, 798 (3d Cir.1990). The rationale for deferring review is that "subjective evaluations 'are more susceptible of abuse and more likely to mask pretext'" and, therefore, are better suited for review at the pretext stage. *Id.* (quoting *Fowle v. C & C Cola,* 868 F.2d 59, 64–65 (3d Cir. 1989)).

¶ 33 Here, it would not be unreasonable to find PPL's "Standards of Integrity" an objective job qualification of which Kroptavich dispossessed himself through his conduct. Nonetheless, we are reluctant to make this *prima facie* finding where the central claim in this case is that PPL's retention of other similarly situated policy violators shows that Kroptavich's violation was but a pretextual reason to discriminate against him because of his age. Moreover, there was a subjective element to PPL's position to terminate Kroptavich, as it was PPL's argument that Kroptavich no longer possessed the integrity required of managers in leading subordinate employees by example. Accordingly, we find it preferable to defer review of Kroptavich's policy violation under the pretext stage.

¶ 34 For purposes of the *prima facie* case prong (ii), the record shows no dis-

pute that Kroptavich was, by all other objective indices, qualified for his position. We find, therefore, that he satisfied prong (ii) of the *prima facie* case.

¶ 35 Therefore, the evidence before us is that Kroptavich was over forty years old, qualified for the position he held, and nonetheless terminated despite PPL's continued need for someone to perform his job duties. Such evidence, in our opinion,

> raise[s] an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting.

*Pivirotto*, 191 F.3d at 352 (quoting *Furnco*, 438 U.S. at 577, 98 S.Ct. 2943). Accordingly, we find that Kroptavich has made out a *prima facie* case of age discrimination under the PHRA.

¶ 36 We proceed, then, to the second part of the *McDonnell Douglas* framework, where PPL must articulate a legitimate, nondiscriminatory reason for terminating Kroptavich. PPL, as noted, does not leave its employment decision unexplained, but states that it terminated Kroptavich because he violated PPL's written "Standards of Integrity" when he accepted a $200.00 cash gift from a contractor and initially lied to a supervisor when asked whether he received such a gift. Kroptavich does not dispute that PPL's reason, as articulated, states a legitimate, nondiscriminatory basis for its employment decision. Accordingly, PPL has met its burden of production.

¶ 37 Under *McDonnell Douglas*, therefore, the inquiry shifts the burden back to Kroptavich to show that PPL's purportedly legitimate reason was but a pretext for what was actually a motive to discriminate on the basis of age. As noted above, to survive summary judgment in the pretext phase, the plaintiff must point to some evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Showalter v. Univ. of Pittsburgh Medical Ctr.*, 190 F.3d 231, 234 (3d Cir.1999) (citation omitted); *Jacques*, *supra*.

¶ 38 To discredit an employer's articulated reason, a plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 732 (3d Cir. 1995). Nor, as a matter of law, must a plaintiff produce evidence in excess of that produced in his *prima facie* case in order to prevail, *Fuentes*, 32 F.3d at 764, although inferences acceptable at the *prima facie* stage may not satisfy the higher level of specificity usually required at the pretext stage. *Simpson*, 142 F.3d at 646.

> [In the pretext stage], [t]he plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence' " and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.

*Simpson*, 142 F.3d at 644 (quoting *Fuentes*, 32 F.3d at 764–765).

¶ 39 To show that discrimination was more likely than not a cause for the employer's action,

> the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance

of the evidence that age was a motivating or determinative factor in the employment decision.

*Simpson*, 142 F.3d at 644–645 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir.1997)).

¶ 40 Here, the minimal threshold *prima facie* evidence, alone, neither undermines PPL's articulated explanation for terminating Kroptavich nor, given the explanation, allows a reasonable factfinder to infer discrimination. The proscribed conduct that formed the basis for Kroptavich's termination concerned his inability to adhere to PPL's requirement that its managers conduct their business affairs with integrity and free from the appearance of impropriety. It had nothing to do with either his ability to perform the particular tasks demanded by his position or PPL's continued need for such services. Therefore, the minimal *prima facie* case sheds no light on the credence of PPL's stated explanation and may not by itself allow for an inference of discrimination.

¶ 41 However, Kroptavich's main contention was that similarly situated, younger workers also violated PPL policy but were spared the sanction of termination that he suffered. If supported with evidence of sufficient specificity and probative value, this claim of disparate treatment could permit a reasonable jury to find that PPL's articulated reason was pretextual and/or that age discrimination motivated PPL. *See Pivirotto*, 191 F.3d at 357; *Simpson*, 142 F.3d at 644 (acknowledging that disparate treatment from that received by substantially younger, similarly situated workers states a claim under the ADEA).

■ ¶ 42 Despite reviewing the record in a light most favorable to Kroptavich as the adverse party to the motion for summary judgment, we find that he has failed his burden under Pa.R.C.P. 1035.2 to produce evidence sufficiently specific or probative to require submission of his claim to a jury. Kroptavich's evidentiary burden in the *McDonnell Douglas* pretext stage is to point to triable, admissible evidence that would allow a factfinder to find pretext and/or outright discrimination. *Stanziale v. Jargowsky*, 200 F.3d 101 (3d Cir.2000). He has not met this burden.

¶ 43 Initially, we note that Kroptavich claims disparate treatment compared to that received by younger workers, but he offers no evidence of the comparator employees' respective ages. We refrain from deciding the issue against Kroptavich on this fact alone, however, since federal jurisprudence has recognized that even in cases where the age difference is insignificant, "the plaintiff still may present a triable claim if [he] directs the court to evidence that [his] employer considered [his] age to be significant." *Bennington v. Caterpillar Incorporated*, 275 F.3d 654, 659 (7th Cir.2001). Rather, our decision rests on the fact that Kroptavich's disparate treatment claim is based on inadmissible hearsay, vague accounts, and other anecdotal evidence which he admits he could "not verify." Moreover, even where it is arguable that Kroptavich or his witnesses possessed personal knowledge about more favorable treatment received by others, there is no question that such instances involved employees who were not management, did not accept gifts, or whose incidents occurred so remote in time so as to predate the PPL policy in question.

¶ 44 Specifically, Kroptavich named three employees who violated PPL policy but kept their jobs. When deposed about each employee, however, Kroptavich admitted that his knowledge was based on second-hand sources of information, would not identify the sources, and could not indicate when the events occurred:

Q. Let's talk about [Employee # 1]. You said that there was an allega-

tion of this [employee] running a prostitution ring from his computer?

A. His own computer, which was company property.

Q. Now, how do you know that?

A. Again, when I was trying to, you know, piece things together in my defense, you know, we had all heard that—you know, those stories and—

Q. Do you know whether that's a true story?

A. I did not go down to Allentown and find out the facts, but I'm just saying a lot of the individuals that have told me that I believe.

* * *

Q. [Employee # 2] was supposed to have done what?

A. Supposedly, he had given out favorable contracts to vendors in the Hazleton area.

Q. And who told you that? Let me put it to you this way, first of all: Do you have any personal knowledge that he, in fact, did that?

A. Okay, at about the time of my dismissal, it was discussed on the dock with a bunch of individuals from building maintenance.

Q. Can you identify who they were?

A. I wish I knew whether he [already took his retirement]. I have to stand on the other. I can't give names out because I'm afraid, especially with it being a supervisor, that there would be retaliation. But on those, you guys should have the facts on that.

* * *

Q. Now, you mentioned, as well, a serviceman who worked at a relative's

beer distributorship on company time?

A. That's correct.

Q. And who was that?

A. That was [Employee # 3], I believe. Wait. [Employee # 3].

Q. And when did that happen?

A. I have no idea. But I do know, again, you know, it was in the northern division.

. . .

Q. And who told you that?

A. Again, I cannot, you know, give names unless I'm forced to.

Kroptavich deposition, dated 3/13/98, at 125, 130, 133.

¶ 45 Not only does Kroptavich's testimony consist entirely of hearsay, allusions, and other unspecific allegations, it also fails to establish that the purported violations bore a sufficient resemblance to his own. None of the comparator employees were involved in accepting gifts from contractors,[3] Employees # 1 and # 3 did not hold management positions as he held, and no time frame for the violations is given. Thus, Kroptavich's deposition testimony is too weak and lacks the probative value needed to satisfy Appellant's evidentiary burden in the pretext stage.

¶ 46 Kroptavich attempted to remedy the shortcomings of his own deposition by including in his "Brief in Opposition to Defendant's Motion for Summary Judgment" the affidavit of Ray Jackloski, a former PPL Foreman who retired in 1989. In his three-page affidavit, Mr. Jackloski averred that during his years with PPL it was common practice for foremen to accept holiday "gift certificates, fruit baskets, sweatshirts with the contractor's

---

**3.** Elsewhere in his deposition, Kroptavich alleged that employees in PPL's marketing department openly accepted Hickory Farms gifts from vendors. However, Kroptavich never alleges that the employees were management, and he concedes that this event predated the PPL policy at issue. Kroptavich Deposition at 70.

logo, wine bottles, etc." from contractors. Jackloski also stated that he was familiar with Employee # 1's case because it arose while he was still with PPL. *See* Affidavit of Ray Jackloski dated 3/17/99.

¶ 47 Even assuming under the Summary Judgment standard the veracity of Mr. Jackloski's affidavit, we find that it fails to establish "similarly situated" evidence. Jackloski describes conduct and events, including Employee # 1's case, that occurred at least six years before Kroptavich's incident and five years before the date on which the PPL policies at issue took effect. Any disparate treatment that Kroptavich received relative to treatment received by others in the mid-to-late 1980's must be viewed as a function of different times and circumstances where different corporate rules governed employee conduct.

¶ 48 In fact, the record discloses only one employee arguably similarly situated to Kroptavich for purposes of this case— another Line Crew Foreman who received a gift certificate from Neal–Lynn during Christmas of 1994. However, unlike Kroptavich, the other Line Crew Foreman returned the gift to Neal–Lynn and reported the incident to supervisors without first attempting to conceal the gift-giving. PPL auditors investigated the incident as they did Kroptavich's, but concluded that the Line Crew Foreman had complied with company policy. See Report on the Investigation of a Contractor's Gift–Giving Activities to Northeast Division Employees, dated 2/9/95. On the basis of the auditors' conclusion, PPL retained the Line Crew Foreman, who was fifty-six years old at the time.

¶ 49 In a most critical sense, therefore, Kroptavich stands alone in the record before us as the only management-level employee who violated company policies against accepting gifts. Given this fact, there is simply no substance to his disparate treatment claim.

¶ 50 Finally, Kroptavich attempts to discredit PPL's articulated reason by arguing that the policies in question are not actually relevant to the decision to terminate him because he was not directly involved in procuring contractors for PPL. We have reviewed the two policies in their entirety and note that only one, entitled "Procurement Practices," addresses solely those employees involved in procurement. The other policy, entitled "Standards of Integrity," which PPL also articulated as a basis for Kroptavich's termination, requires every employee to act in ways that can "stand the test of full disclosure," particularly because PPL is a "private company with a public purpose." In this regard the policy states that employees "do not alibi or cover up our mistakes or deficiencies." All employees are also prohibited from accepting gifts "that might create or appear to create a favored position for someone doing business with [PPL]. . . . Gifts that are received by an employee should be returned to the donor and may be accompanied with a copy of this policy." See PPL "Standards of Integrity" policy manual, dated November 1, 1993.

¶ 51 Even if this Court assumes that Kroptavich's practices were not technically subject to the "Procurement Practices" policy manual, it is undeniable that the "Standards of Integrity" policy manual governed all employees, including Kroptavich. Moreover, there is no evidence before us to suggest that PPL was unconcerned with managers who surreptitiously took gifts against policy or who concealed their own infractions from supervisors against policy. In short, Kroptavich fails to produce evidence that PPL's interest in its "Standards of Integrity" policy was illusory and, thus, used as a pretext here.

¶ 52 Therefore, we find Kroptavich has failed to produce sufficient evidence to permit a reasonable factfinder to disbelieve

PPL's articulated reason or to believe that age discrimination was more likely than not the motivating or determinative cause of PPL's employment decision. He has, thus, failed to meet his evidentiary burden in the pretext stage of the *McDonnell Douglas* framework. Accordingly, we find no error with the entry of summary judgment below on Kroptavich's claim of age discrimination under the PHRA.

¶ 53 Kroptavich's third claim on appeal states that "The Constructive Discharge Claim Must Stand." Appellant's Brief at 2, 20. The argument in support of this claim is a bare assertion, without any citation to fact or authority, that "this issue has already been decided by Judge Munley and, therefore, reversing that decision [was] in violation of coordinate jurisdiction." Appellant's Brief at 20. We have already explained why Judge Cottone's grant of summary judgment on the constructive discharge claim did not violate the coordinate jurisdiction rule, and we need not revisit this issue.

¶ 54 Kroptavich also contends in his challenge to summary judgment on the constructive discharge claim that PPL denied him recourse through an "Ombudsman Concept," which former PPL production manager David J. Reed told him existed at PPL before he retired in the late 1980's. Kroptavich has proffered no evidence of record, however, that a PPL ombudsman process existed at the time of his discharge. Moreover, Kroptavich fails to explain how PPL denied him access to such a process, or how the denial of such a process created such an intolerable working environment as to amount to constructive discharge. *See Kroen v. Bedway Sec. Agency,* Inc., 430 Pa.Super. 83, 633 A.2d 628, 633 (1993)(holding that constructive discharge of an at-will employee may serve as a basis for recovery if the employer has made working conditions so intolerable that an employee has been forced to resign). Accordingly, Kroptavich may obtain no relief on this claim.

¶ 55 Finally, Kroptavich contends that Judge Cottone relied on exhibits not made part of the record in accordance with Pa.R.C.P. 1035.1 et seq. We disagree. PPL attached directly to its motion for summary judgment Kroptavich's deposition and various PPL business records as exhibits, and filed it as part of the certified record on February 23, 1999. Therefore, Kroptavich's reliance on *Kerns v. Methodist Hospital* 393 Pa.Super. 533, 574 A.2d 1068 (1990) and *Zepp v. Nationwide Insurance,* 290 Pa.Super. 28, 434 A.2d 112, (1981), cases holding that exhibits attached to memoranda of law rather than to the motion itself are not properly part of the record, is unavailing since they are inapposite to the present case. We thus find PPL's exhibits were properly made part of the certified record.

¶ 56 Moreover, PPL was not required, as Kroptavich implies, to support its motion with affidavits under Pa.R.C.P. 1035.4. Rather, as noted *supra,* PPL needed only to make the showing at the completion of discovery that based on Appellant's discovery materials he would be unable at trial to establish elements necessary to his claims. *See* Pa.R.C.P. 1035.2; *Godlewski v. Pars Mfg. Co.,* 408 Pa.Super. 425, 597 A.2d 106 (1991). It is clear that the order of summary judgment was based on Kroptavich's failure to establish all necessary elements to his claims with his deposition and his other discovery materials. We find no reversible error in this judgment.

¶ 57 For the foregoing reasons, we affirm the order of the court which granted PPL's motion for summary judgment and dismissed Kroptavich's case in its entirety.

Having so affirmed, we need not address the issues raised on PPL's cross-appeal.

¶ 58 Order affirmed.