DISSENTING OPINION BY
JUDGE COHN JUBELIRER
I agree with the Majority’s conclusion that Bruce Leibensperger (Appellant) met his prima facie case of sex discrimination by producing evidence showing the disparate treatment of his co-worker Jackie Berk by Carpenter Technologies, Inc. (Employer). However, because I believe that the evidence presented, if admissible at trial, is not sufficient for Appellant to meet his burden of proving that Employer’s proffered justification for its action was pretext for illegal discrimination, I, respectfully, dissent.
*1080 Central to my disagreement with the Majority is my understanding of this Court’s role at the pretext phase of the analytical model established by the United States Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this model, the burden is on the complainant to produce evidence with sufficient probative force showing that the employer’s proffered reason for its action did not motivate the employer’s action, and that the discrimination was a determinative factor. Kroptavich v. Pa. Power & Light Co., 795 A.2d 1048, 1059 (Pa. Super. 2002). It is not for this Court to act as “arbitral boards ruling on the strength of ‘cause’ for discharge.” Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting Carson v. Bethlehem Steel Corporation, 82 F.3d 157, 159 (7th Cir. 1996)). Our role is to determine whether a reasonable factfinder could conclude, by a preponderance of the evidence, that the proffered reason for the adverse employment action is false and that the real reason for action was unlawful discrimination. Id. The United States Court of Appeals for the Seventh Circuit aptly explains the court’s role at the pretext phase as determining, in light of the evidence presented by the complainant, whether a reasonable factfinder could conclude that “the employer’s proffered reason was pretextual, meaning that it was a lie.” Ransom v. CSC Consulting, Inc., 217 F.3d 467, 471 (7th Cir. 2000) (emphasis added).
I do not believe the Majority’s analysis complies with these principles because it does not require Appellant to adduce evidence showing that Employer’s proffered justification—namely, that Appellant violated Employer’s Workplace Violence Policy (Policy)—was a lie, and did not motivate Employer’s behavior. The Majority holds, in relevant part, as follows:
Given the disparate treatment of other employees as compared to Appellant, as well as the potentially ambiguous nature of Employer’s Policy, a reasonable fact-finder could conclude that Appellant did not violate Employer’s Policy by bringing an inoperable gun onto Employer’s parking area and that Employer’s proffered reason for terminating Appellant’s employment was pretext for discrimination.
Leibensperger v. Carpenter Tech., Inc., 152 A.3d 1066, 1078-79 (Pa. Cmwlth. 2016).
The evidence pointed to by the Majority to support its conclusion does not satisfy either of the two approaches for showing that Employer’s proffered reason is pretext for illegal discrimination: the evidence neither shows (1) that Employer’s proffered reason is so plainly wrong “that a reasonable factfinder could rationally find [it] ‘unworthy of credence’ nor, (2) that the real reason for his discharge was discrimination based on age or sex. Keller, 130 F.3d at 1109 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). First, although I agree with the Majority that Appellant and Ms. Berk are comparators for purpose of establishing a prima facie case of sex discrimination, there is a different standard to be used at the pretext stage. A complainant need not, “as a matter of law, ... produce evidence in excess of that produced in a prima facie case in order to prevail” at the pretext stage. Kroptavich, 795 A.2d at 1059. Yet, because evidence must he assessed in light of the different questions posed at the different stages of the McDonnell Douglas analysis, evidence sufficient to raise an inference of discrimination at the prima facie stage may be insufficient to show that an employer’s proffered justification for its action is pretext for illegal discrimination. See St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (explaining the pretext stage *1081 analysis as “turn[ing] from the few generalized factors that establish a prima facie case to [assessing] the specific proofs and rebuttals of discriminatory motivation the parties have introduced”) (emphasis added); Kroptavich, 795 A.2d at 1059 (stating that “inferences acceptable at the prima facie stage may not satisfy the higher level of specificity usually required at the pretext stage”) (emphasis added); Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1998) (explaining that evidence showing more favorable treatment of a single member of a non-protected group that satisfies a complainant’s burden at the prima facie stage, “where the inquiry is based on a few generalized factors,” may not be sufficient “at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity”) (emphasis added).
Appellant has not met his burden to show that Employer’s disparate treatment of Ms. Berk could lead a rational factfinder to conclude that Employer’s proffered justification for its action was pretext for illegal discrimination.[1] In arguing that its decision to terminate Appellant was motivated by the Policy, Employer acknowledges that Ms. Berk was treated differently, but contends that this disparate treatment was justified as Ms. Berk’s violation of the Policy was not as egregious as Appellant’s violation. The Policy states “[b]ringing a firearm or other dangerous weapon onto [Employer] owned or leased property is considered an intolerable offense for which an employee will be immediately suspended with intent to discharge.” (Policy at 1, R.R. at 101a (emphasis added).) Appellant appears to recognize this distinction. When questioned by Employer in his deposition, Appellant stated as follows.
Q: During the meeting with [Employer’s investigator], did you make any statements to [Employer’s investigator] about what you thought should happen to [Ms.] Berk because of this incident?
[Appellant]: I remember in not so many words indicating when they told me that I was being suspended with the intent to terminate, my first thing was that it should not happen to myself and/or [Ms.] Berk. It should not—she should not be held accountable for this.
Q: Did you remember telling [Employer’s investigator] that you asked that she not lose her job because you were the person responsible for bringing the gun?
[Appellant]: Well, I did bring the gun so I was responsible for bringing the gun.
Q: That’s not my question. I’m asking— thank you. But what I asked you is did you tell [Employer’s investigator] that you thought that she should not be held responsible because she was not the person who brought the gun to work?
[Appellant]: Yes.
(Appellant’s Dep. at 41-42, R.R. at 89ar-90a.) While Employer’s decision to not treat Ms. Berk and Appellant equally may support an inference of discrimination at the prima facie stage of the McDonnell Douglas analysis, Appellant’s admission that the different treatment was justified, and advocacy in support of different treatment of Ms. Berk, necessarily precludes a finding that Ms. Berk’s different treatment shows that Employer’s proffered reason for its action is pretext. Because Appellant has offered no other evidence showing that Employer’s reliance on the Policy was a *1082 cover-up for illegal discrimination, this Court must grant summary judgment to Employer.[2] See Ertel v. Patriot-News Co., 544 Pa. 93, 674 A.2d 1038, 1042 (1996) (holding the failure of “a non-moving party [to] adduce sufficient evidence on an issue ... on which he bears the burden of proof’ “establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law”).
Second, the Majority concludes that a reasonable factfinder could conclude that Employer’s proffered justification was pretext for illegal discrimination because the Policy was “potentially ambiguous” and because a reasonable factfinder could conclude that Appellant did not violate the Policy by bringing an inoperable firearm onto the parking lot. Leibensperger, 152 A.3d at 1077-78. This reasoning is misplaced. Whether the Policy was clear and understood by Appellant, and whether Employer correctly applied the Policy is not relevant at the pretext stage of the McDonnell Douglas analysis. According to the United States Court of Appeals for the Third Circuit, to survive summary judgment at the pretext stage, “the plaintiff cannot simply show that the employer’s decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.” Fuentes, 32 F.3d at 765. The only question before the fact-finder is whether the evidence shows that Employer’s proffered justification is a lie and that the discriminatory animus motivated the action.
Furthermore, even if the evidence could lend itself to prove that Employer’s proffered justification is pretext for illegal discrimination, Appellant still falls short of meeting his burden. The Majority concludes that because Mr. Marko and the other man were not fired for bringing hunting bows onto Employer’s parking lot, Appellant could have reasonably believed that the Policy did not apply to his firearm, and that Appellant possibly did not violate the Policy. No reasonable factfinder could conclude that Appellant did not violate the Policy from the treatment of these men because, as the Majority notes, Mr. Marko and the other man were, in fact, punished for violating the Policy, albeit less harshly than Appellant was punished. Leibensperger, 152 A.3d at 1071 (citing Employer’s Exs. 30, 31, S.R.R. at 242b, 246b.)
The Majority finds the evidence showing that Appellant’s firearm was not operable particularly probative of discriminatory animus. However, the Policy makes no distinction concerning whether or not a dangerous weapon is operable. The intent of *1083 the Policy, noted in the Policy itself, is “to provide a safe and secure work environment which is free from threats, threatening behavior, acts of violence, or any other related activity which is disruptive to employees.” (Policy at 1, R.R. at 101a.) Employer’s belief that an inoperable firearm, when brandished at another employee, is just as threatening and disruptive as an operable one, is not so plainly wrong that a reasonable factfinder could conclude that Employer’s reliance on the Policy to justify its action was unworthy of credence.
Finally, no reasonable factfinder could conclude that Employer’s justification was unworthy of credence by the fact that Employer ¡nade a one-time exception to the Policy in 1996 for the distribution of a special edition commemorative rifle. Employer presented evidence showing that the 1996 rifle sale was a one-time exception to the Policy.[3] Employer wrote a memo to its staff prior to the 1996 collectible rifle sale outlining when and where individuals should pick up the pre-ordered rifle. The memo contained the following language:
Please remember that it is against company policy to have a firearm on company premises. If you must pick up your rifle at any other time than when you are leaving work, you must keep the rifle secured in your vehicle. Under no circhmstances may a firearm be taken into any office or mill area. This exception to the policy will only apply to the distribution of the Ruger rifles and will not apply under any other circumstances.
(Employer’s Memo to Staff on Commemorative Rifle Sale, Employer’s Ex. 20, at #5, R.R. at 146a) (emphasis added). Employer’s one-time exception to the Policy, clearly communicated to employees as an exception, does not preclude Employer from applying the Policy years later under very different circumstances.
In sum, I see no evidence by which a reasonable factfinder could conclude that Employer’s proffered justification was a lie, nor that the actual motive for discharging Appellant was age or sex. I would, therefore, affirm the Order of the Court of Common Pleas of Berks County.
Judges Simpson and Covey join this dissenting opinion.

. The potentially disparate treatment of Mr. Marko, who allegedly brought bows onto Employer’s parking lot, is not at issue in the pretext phase as the Majority correctly holds that Mr. Marko is not a sufficient comparator *1082 to Appellant. Leibensperger, 152 A.3d at 1075-76.

. The Majority states that the Dissent "appears to view the evidence in the light most favorable to Employer to find that Employer was justified in imposing a less severe disciplinary sanction on Berk because Berk's conduct ‘was not as egregious as Appellant’s violation.' ” Leibensperger, 152 A.3d at 1078 n.8. The section of this Dissent quoted by the Majority is a summary of Employer’s argument, not the Dissent's conclusion that Employer’s action was justified. It is not for this Court to make a judgment on the wisdom of Employer’s action. The Dissent simply con-eludes that Appellant cannot meet his burden of proving that Employer's articulated justification was pretext for sex discrimination based solely on evidence that Ms. Berk was treated differently when Appellant’s deposition testimony establishes that Appellant advocated for Ms, Berk to be treated differently based on her conduct, not her sex. The Majority completely ignores this highly probative evidence. Our standard of review provides no justification for ignoring Appellant's unfavorable deposition testimony. We are to look at the evidence in the light most favorable to the non-moving party; this does not mean that we only look at evidence that is favorable to the non-moving party and disregard the rest.

, While there is evidence of a previous commemorative revolver sale in 1989, the Majority rightly points out that there is no evidence in the record showing that the Policy was in effect at that time. Leibensperger, 152 A.3d at 1070 n.3.