J-S14032-18

2018 PA Super 99

| | | |
|---|---|---|
| BARBARA FERRARO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEMPLE UNIVERSITY AND TEMPLE | : | No. 2682 EDA 2017 |
| PHYSICIANS, INC. | : | |

Appeal from the Judgment Entered July 18, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  June Term, 2015 No.2478

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

OPINION BY RANSOM, J.:                                    **FILED APRIL 26, 2018**

Appellant Barbara Ferraro appeals from the judgment entered on July 18, 2017, in favor of Appellees Temple University and Temple Physicians, Inc. (collectively, "Temple"), in her age discrimination and retaliation action, relating to her dismissal from Temple's employment.  We affirm.

In January 2012, Ferraro, who was then sixty-two years old, was fired from her full-time position at Temple as a manager of patient accounting. Amended Trial Court Opinion (TCO), 7/18/17, at 1-2.  According to Temple, Ferraro was fired for taking inappropriate disciplinary action against an employee whom she oversaw.  Ferraro contends that her firing was due to her age and in retaliation for events beginning in 2010.

_____
* Retired Senior Judge assigned to the Superior Court.

In 2010, Temple commenced an office-wide implementation of new accounting software. Notes of Testimony (N.T.), 1/4/17, at 66-72, 91, 94-97; TCO at 2. Ferraro maintains that, during the software rollout, she was excluded from training meetings, her team was the last to be trained, and Temple offered training to her younger peer, then-thirty-six-year-old Tiffany Richardson, instead of Ferraro. During this time, Ferraro's supervisor asked her when she was going to retire.

Appellant Ferraro also insists that Richardson, who is a single mother with three children, received substantially better treatment than she from 2010 until her termination in 2012. N.T., 1/6/17, at 179-85, 193-94, 198-200; TCO at 11-12. For example, Temple allowed Richardson to have a flexible schedule. Additionally, even though Richardson was disciplined for her attitude and rudeness several times, she only ever received counseling and was asked to apologize, unlike Ferraro, who was terminated after a disciplinary action.

Ferraro filed an internal age-discrimination complaint in 2010. TCO at 1-2; N.T., 1/4/17, at 67-68. The subsequent investigation, conducted by Temple Human Resources employee Carolyn Ashburn, found no discrimination against Ferraro.

In its opinion, the trial court correctly sets forth additional facts of this case, as follows:

> Ferraro began to oversee Diane James . . . in March of 2010, giving rise to the events that led to her termination in 2012. By

- 2 -

all accounts, Ms. James seemed to be an insubordinate employee. She received corrective actions for leaving work early, tardiness, and other performance issues such as failing to meet quota. Ms. James eventually applied for and was granted Family Medical Leave ("FMLA") for herself and her son. Soon after, she began to clash with Ms. Ferraro over documenting her FMLA absences. [Temple]'s rules require an employee to inform her supervisor two weeks prior to an FMLA absence. If a [Temple] employee's family member also qualifies for FMLA, the employee must clarify, without giving substantive detail, whether the FMLA absence pertains to the employee or family member. Ms. James consistently failed to communicate this information to Ms. Ferraro. Ms. Ferraro kept meticulous records of Ms. James's frequent and unexplained comings and goings because of this communication breakdown.

TCO at 3 (citations to the record omitted).

On September 27, 2011, James sent an e-mail at 8:36 a.m. informing Ferraro that she had a doctor's appointment at 12:00 p.m. and would be taking a half day of FMLA time. N.T., 1/4/17, at 187-88; Exs. P-16 & P-26. Ferraro inquired as to whether the FMLA time was for James or her son. James responded that it was for herself. Temple's employees are required to provide two weeks' notice of doctor's appointments. Ferraro thus inquired further as to why James was only giving less than four hours' notice of this appointment. During trial, Ferraro represented that she "never asked [James] what was wrong with her" and did not ask James to tell her the reasons that qualified James for FMLA.

Ferraro contacted Richard West . . . , a manager in the absence management department, about how to handle the situation with Ms. James. Mr. West instructed Ms. Ferraro to classify unexplained absences as attendance incidents and, remind Ms. James of her responsibility to inform [Temple] of FMLA related absences. Ms. Ferraro followed Mr. West's suggestions but Ms. James continued her insubordinate behavior. When

- 3 -

> Ms. Ferraro pressed Ms. James for clarifications, Ms. James responded by filing a harassment claim against her in January of 2011.

TCO at 3 (citations to the record omitted).

Temple's Associate Director for Human Resources, Brenna Woods, investigated James's complaint against Ferraro and provided a copy of her report to Ashburn in December 2011. N.T., 1/5/16, at 31, 35-39, 54-55. Ashburn wrote a note on Woods's report stating that Ferraro had brought an age discrimination complaint in November 2010, but she later testified that she never discussed Ferraro's age discrimination complaint with Woods.

Ferraro was "fired in January of 2012 for FMLA violations against Ms. James. [Temple]'s position is that Ms. Ferraro's inquiries and record keeping constituted discrimination against the FMLA rights of Ms. James, a fireable offense. [Temple] also claims that Ms. Ferraro issued Ms. James an improper citation." TCO at 3-4 (citations to the record omitted). Ferraro "was replaced by a women who is approximately 50 years old." *Id.* at 6.

In January 2012, Ferraro filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discriminatory discharge based upon her age and retaliation for having previously engaged in protected conduct. N.T., 1/4/17, at 191-92; N.T., 1/6/17, at 201-03. The EEOC ruled that the complaint was unsubstantiated.

In June 2015, Ferraro commenced this action by writ of summons. In July 2015, Ferraro filed a complaint, alleging that Temple had violated the Pennsylvania Human Relations Act ("PHRA").[1] Compl., 7/1/15, at 3-5 ¶¶ 22-23, 31-32, 36. A bench trial was held in January 2017. In June 2017, the trial court found in favor of Temple.

After receiving Ferraro's post-trial motions challenging the weight of the evidence and requesting a new trial, the trial court again found in favor of Temple in July 2017. In August 2017, Ferraro filed a notice of appeal and a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In response, the trial court relied upon its prior opinions.

Ferraro now presents the following issues for our review:

1.  Did [t]he [trial c]ourt commit an error of law by ruling that the credibility of the proffered reason offered by [Temple] for the termination of [Ferraro]'s employment is not relevant to the determination of whether [Temple]'s reason for discharging [Ferraro]'s employment is a pretext?

2.  Did the [t]rial [c]ourt commit an error of law and go against the weight of evidence by failing to identify [Ferraro]'s pretext evidence and, instead, mistakenly identify evidence of protected activity (and direct evidence of age discrimination) as pretext evidence?

3.  Did the [t]rial [c]ourt commit an error of law and go against the weight of the evidence by not determining that the reasons offered by [Temple] for [Ferraro]'s termination were false.

4.  Did the [t]rial [c]ourt commit an error of law and go against the weight of the evidence by failing to determine that

---

[1] 43 P.S. §§ 951-963.

[Ferraro]'s substantially younger coworker was given preferential treatment and that [Ferraro] was subjected to discriminatory discharge because of her age?

5.    Did the [t]rial [c]ourt commit an error of law and go against the weight of the evidence by finding that [Ferraro] was not subjected to retaliatory discharge?

Ferraro's Brief at 4-5 (suggested answers omitted).

Our standard for reviewing non-jury verdicts is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.  However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Bank of N.Y. Mellon v. Bach**, 159 A.3d 16, 19 (Pa. Super.) (citation omitted), **appeal denied**, 170 A.3d 1019 (Pa. 2017).

## Age Discrimination

In an employment discrimination case, a three-part burden-shifting framework has been developed.  **Kroptavich v. Pa. Power & Light Co.**, 795 A.2d 1048, 1055 (Pa. Super. 2002).  First, a plaintiff bears the burden of establishing a *prima facie* case of discrimination.  This Court has explained the elements of a *prima facie* case of age discrimination as follows:

- 6 -

[A]n age discrimination plaintiff may make a *prima facie* case with evidence showing that the plaintiff at the relevant time: (i) belonged to a protected class, i.e., was at least 40 years of age; (ii) was qualified for the position; (iii) was dismissed despite being qualified; and (iv) suffered dismissal under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone substantially younger.

*Id.* at 1056. Here, the trial court concluded that Ferraro put forth credible evidence satisfying the requirements of a *prima facie* case of discrimination: she is a member of a protected class, she is qualified for the position, she suffered an adverse employment action, and the twelve-year age difference between Ferraro and her replacement "is substantial enough to raise an inference of age discrimination." TCO at 6.

If the plaintiff does establish a *prima facie* case, a presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. The employer's burden in this **second part** is one of production, not persuasion, and thus involves **no credibility assessment**. If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's *prima facie* case is rebutted and the presumption simply drops out of the picture.

*Kroptavich*, 795 A.2d at 1055 (emphasis added) (internal citations and quotation marks omitted).

For this step, under the heading "[Temple]'s Legitimate Non-discriminatory Reason for Terminating Ms. Ferraro,"[2] the trial court states that it "does not find any of [Temple]'s witnesses' testimonies credible. . . . However, as a matter of law, [Temple] must only submit a non-discriminatory reason for the adverse employment action. Therefore, the credibility of such reason is irrelevant." TCO at 6 & 7 n.4; *see also id.* at 8 n.5 (the trial court "finds the proffered reason incredible").

Ferraro contends that the trial court was wrong to conclude that "credibility is not to be considered when assessing the employer's proffered reason for the adverse action is an error of law." Ferraro's Brief at 49. Ferraro cites to the federal court cases of *Brewer v. Quaker State*, 72 F.3d 326, 331 (3d Cir. 1995), and *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994),[3] for the principle that "[t]he way an employee shows that an

---

[2] The trial court opinion has separate headings for "Legal Framework For Establishing Pretext" and "Plaintiff Has Not Provided Sufficient Evidence to Show Pretext." TCO at 8, 10.

[3] Both *Brewer* and *Fuentes* were actions brought pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, not the PHRA. However, both the PHRA and the ADEA prohibit discrimination based on age. *See* Section 5(a) of PHRA, 43 P.S. § 955(a) ("It shall be an unlawful discriminatory practice . . . [f]or any employer because of . . . age . . . to discharge from employment such individual . . . if the individual or independent contractor is the best able and most competent to perform the services required"); Section 623(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"). "[C]laims brought under the PHRA are analyzed
*(Footnote Continued Next Page)*

employer's proffered reason is a pretext is to test the credibility and plausibility of the [e]mployer's reasons." Ferraro's Brief at 49-50. She continues: "A fact finder can thus reject the employer's proffered reason for the discharge solely because the reason is not credible." *Id.* at 50.

However, for this second part of the burden-shifting framework, when the burden is on the employer, there is no credibility assessment. *Kroptavich*, 795 A.2d at 1055. Ferraro has confused the second and third steps of the framework. "If the employer satisfies its burden of production, the **third and final part** of the [burden-shifting] framework gives the plaintiff the opportunity to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation." *Id.* (emphasis added). Thus, Ferraro's argument that "[t]he way an employee shows that an employer's proffered reason is a pretext is to test the credibility and plausibility of the [e]mployer's reasons" relates to this **third** step in the framework, whereas the trial court's statement that the credibility of Temple's witnesses is irrelevant is explicitly limited to the **second** step. *Compare* Ferraro's Brief at 49-50 *with* TCO at 7 ("The credibility of [Temple]'s reason is not relevant **for this step** because the employer's burden is one of production, not persuasion." (emphasis added) (citation omitted)). Even the federal cases cited by Ferraro relate to this

_(Footnote Continued)_ _____

under the same standards as their federal counterparts." *Kroptavich*, 795 A.2d at 1055.

third step, not the second step. **Brewer**, 72 F.3d at 337 (what evidence employees can rely on to show pretext); **Fuentes**, 32 F.3d at 764, 766 ("factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext" (citation omitted)). Hence, Ferraro's first challenge raised on appeal misstates the trial court's determination and thereby is meritless.

Finally, as noted above, "the third and final part of the [burden-shifting] framework gives the plaintiff the opportunity to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation." **Kroptavich**, 795 A.2d at 1055. "[T]he employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm **the ultimate burden of proving intentional discrimination always rests with the plaintiff**." **Id.** (emphasis added) (citation omitted). Thus, for the third prong of the burden-shifting analysis to prove age discrimination, the burden was on Ferraro to establish that Temple's proffered reason was not pretext; the burden was not on Temple to prove that its proffered reason was legitimate. **See id.**

For this third prong, Ferraro first contends that "the trial court ignored the key evidence of the September 27, 2011 email and, instead, focused on evidence from 2010 that was not pretext." Ferraro's Brief at 53. However,

we are not permitted to re-weigh evidence; that is a function exclusively of the fact-finder – in this case, the trial court. ***Commonwealth v. Talbert***, 129 A.3d 536, 545–46 (Pa. Super. 2015). The trial court opinion referenced "Ferraro's inquiries" regarding FMLA, which would include the e-mail chain of September 27, 2011. TCO at 3. The trial court explained that the "inquiries" were only one of several concerns Temple expressed about Ferraro. ***Id.***[4] The trial court did not discuss the e-mail chain specifically in the argument section, thereby demonstrating that said e-mail chain did not have the impact that Appellant tries to present. The trial court made a factual determination, supported by the record. If the trial court did not find this e-mail chain to be "key evidence" or did not interpret it in the manner that Ferraro wished the trial court to do, that is the trial court's prerogative as fact-finder, and we will not reverse on this basis. ***See Talbert***, 129 A.3d at 545–46.

_____

[4] Woods testified that her investigation revealed serious concerns about how Ferraro managed employees on FMLA leave, including: wrongly administered disciplinary action; an improper performance write-up; a discrepancy in Appellant's attendance-tracking practices for employees on FMLA; and Appellant's refusal to accept responsibility and to modify her management behavior. N.T., 1/6/17, at 253-56, 259-60, 269, 275, 282, 294. Woods had "concerns [about] putting [Ferraro] back in the workplace . . . , because an uncomfortable environment had been created at that point[.]" ***Id.*** at 282. Ferraro had not given Woods any assurance that she would not continue to treat people differently due to FMLA use. ***Id.*** at 282, 294-95.

In addition, Ferraro argues that the trial court also ignored the "key evidence" that Richardson was treated differently by Temple than she was. Ferraro's Brief at 55. After a thorough review of the record, the briefs of the parties, and the applicable law, we conclude that Ferraro's challenge merits no relief. The trial court opinion comprehensively discusses and properly disposes of her contention:

> Ferraro argues that Ms. Richardson, a substantially younger woman, was given preferential treatment. This treatment was in the form of a flexible schedule and multiple disciplinary actions which resulted in counseling as opposed to termination. . . .
>
> This [trial c]ourt flatly rejects Ms. Ferraro's arguments **because she failed to present evidence that the alleged preferential treatment was in fact preferential on account of age.** It should be noted that Ms. Richardson is a single mother of three. There might be a thousand reasons why a single parent of three might need to leave work early or come in late, none of which are related to the relative age difference between Ms. Richardson and Ms. Ferraro. The age discrimination complaint made against Ms. Richardson was found to be unsubstantiated by the EEOC. The other complaints filed against Ms. Richardson were for attitude and emails which some employees saw as rude. These complaints were resolved with a simple apology.

TCO at 11-12 (emphasis added) (citations to the record omitted). Based upon this well-reasoned analysis, we find that the trial court did not abuse its discretion when comparing the evidence of Richardson's treatment to Ferraro's.

Ergo, we conclude that Ferraro has failed "to show that the legitimate reasons proffered by the employer were pretexts **for what, in reality, was a discriminatory motivation**." *Kroptavich*, 795 A.2d at 1055 (emphasis

added). Even where, as here, the fact-finder concluded that the reasons offered by the employer were not credible, TCO at 7 n.4 & 8 n.5, the employee still had to prove that the real reason for her termination or other censure was a discriminatory one. **See Kroptavich**, 795 A.2d at 1055. In other words, just because the employer's proffered reason for the employee's termination is false does not automatically mean that the employee's suggested discriminatory reason is true nor established by evidence.

Although the trial court did not find Temple's proffered reason to be credible, it also found that Ferraro – who now, in this third step of the framework, has the burden of proof – had still failed to establish that Temple had discriminated against her and had terminated her employment due to her age and not for any other legitimate reason. **Kroptavich**, 795 A.2d at 1055; TCO at 12-13. Due to her failure to establish this third prong, Ferraro's entire age discrimination claim fails.

### Retaliation

Ferraro urges this Court to find that "the trial court committed an error of law and went against the weight of the evidence by not finding that [she] suffered retaliatory discharge." Ferraro's Brief at 58. According to Ferraro, the alleged retaliation was due to her filing of the internal age discrimination complaint in 2010. **Id.**; **see also** TCO at 1-2; N.T., 1/4/17, at 67-68.

Our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Talbert*, 129 A.3d at 545–46 (internal brackets, citations, and quotation marks omitted; some additional formatting).

We have not found – and the parties have not provided – any case law from the Supreme Court of Pennsylvania or the Superior Court of Pennsylvania on retaliation. However, this subject has been discussed multiple times in the Commonwealth Court and the Third Circuit. Although we are not bound by decisions from the Commonwealth Court or from courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and (for other jurisdictions) not incompatible with Pennsylvania law. *Newell v. Mont. W., Inc.*, 154 A.3d 819, 823 & n.6 (Pa. Super. 2017).

In *Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 399 (Pa. Cmwlth. 2005), the Commonwealth Court articulated the elements to establish a *prima facie* case of retaliation:

> A *prima facie* case of retaliation requires a complainant to show that: (i) she was engaged in a protected activity; (ii) her employer was aware of the protected activity; (iii) subsequent to participation in the protected activity complainant was subjected

- 14 -

to an adverse employment action; and (iv) there is a causal connection between participation in the protected activity and the adverse employment action.

In ***Lauren W. ex rel. Jean W. v. DeFlaminis***, 480 F.3d 259 (3d Cir. 2007), the Third Circuit analyzed how the fourth element, the "causal connection," can be established:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

***Id.*** at 267 (internal citations and quotation marks omitted).

In the current action, the trial court found that Appellant failed to establish the fourth element of retaliation – *i.e.*, that there was a causal connection between Appellant's protected activity of filing an age discrimination complaint and the adverse employment action. TCO at 16; ***see also Spanish***, 879 A.2d at 399. According to the trial court, in order to demonstrate that the 2010 complaint was a proximate cause of her 2012 termination, Ferraro needed to provide evidence that the two events were connected or that her termination occurred within an unusually close proximity to the protected activity. TCO at 16. The trial court concluded that Ferraro had not provided such evidence and, consequently, failed to establish a case of retaliation. ***Id.***

We agree with the trial court that there is no unusually suggestive temporal proximity between Ferraro filing her internal age discrimination

complaint in 2010 and her firing in 2012. *Lauren W.*, 480 F.3d at 267; *see also* N.T., 1/4/17, at 67-68; TCO at 1-2, 16. We also give the gravest consideration to the trial court's finding that there was no evidence from the record as a whole from which the trial court, as fact-finder, should have inferred causation. *Lauren W.*, 480 F.3d at 267; *see also Talbert*, 129 A.3d at 545-46.

Nevertheless, the trial court opinion does not analyze whether a pattern of antagonism coupled with timing established a causal link. *Lauren W.*, 480 F.3d at 267; TCO at 16. Ferraro contends:

> Here, the [t]rial [c]ourt and [Temple] fail to acknowledge that the circumstances as a whole provide ample evidence to suggest that the employer had retaliatory animus. This includes [Ferraro]'s pretext evidence, which can suggest that [Temple] had a retaliatory animus. Furthermore, there was substantial evidence that the individuals responsible for the adverse action knew of [Ferraro]'s protected conduct at the time they acted. Moreover, not only did the individuals know of Ms. Ferraro's protected activity, but both Carolyn Ashburn and Brenna Woods clearly lied or intentionally misled the [t]rial [c]ourt when they denied conferring in December 2011 about Ms. Ferraro's prior November 2010 age discrimination complaint. In fact the [t]rial [c]ourt tacitly acknowledged this to be true when it found that none of [Temple]'s witnesses were credible. These falsities alone demonstrate retaliatory intent, but when coupled with the other pretext evidence already discussed, it is clear [Ferraro] suffered a retaliatory discharge.

Ferraro's Reply Brief at 10 (citations omitted). Nonetheless, Ferraro does not clearly indicate any particular actions that were antagonistic. If we accept her implication that the discussion between Ashburn and Woods – assuming it even happened -- was antagonistic, that is still only one

- 16 -

incident, which is insufficient to demonstrate a "pattern." ***Lauren W.***, 480 F.3d at 267; N.T., 1/5/16, at 31, 35-39, 54-55.

Finally, Ferraro generally states that "the trial court's opinion is not supported by competent evidence" and that "the weight of the evidence in this case is so contrary to the [t]rial [c]ourt's [opinion] against [her] that a new trial is necessary to remedy the situation." Ferraro's Brief at 60 (citing ***Lanning v. West***, 803 A.2d 753, 765 (Pa. Super. 2002)).

Questions of the weight of the evidence are solely the province of the fact-finder – here, the trial court – who is free to believe or to disbelieve any evidence it chooses. ***Talbert***, 129 A.3d at 545–46. We cannot and will not re-weigh the evidence nor re-assess the credibility of the witnesses. ***Id.***

Here, the trial court exercised its discretion and concluded that Ferraro had not provided sufficient evidence to show pretext for age discrimination. ***See id.***; TCO at 10. In reaching this conclusion, the trial court took into consideration several pieces of evidence. ***Id.*** at 10-11 (citing N.T., 1/4/17, at 94-96; N.T., 1/6/17, at 27-28; Plaintiff's Proposed Findings of Fact ¶ 6 (citing N.T., 1/4/17, at 73-75; N.T., 1/6/17, at 57-58)). First, the trial court considered that the inquiry from Ferraro's supervisor about her retirement plans occurred in 2010 – more than a year before Ferraro's firing in January 2012. N.T., 1/4/17, at 66-72, 91, 94-97; TCO at 1-2. The trial court was also aware that Ferraro was the last to receive training during the software rollout. Additionally, the trial court knew that a substantially younger

woman was given preferential treatment. Notwithstanding the trial court's awareness of these facts, they did not alter its verdict.

The trial court also held that the record is devoid of evidence showing inconsistencies or contradictions in Temple's employment practices, such as a coercive retirement scheme, a pattern of giving younger but unqualified employees promotions over older and qualified employees, or a system that gave lighter punishments to younger employees than older employees for the same infractions. TCO at 12 (citing **Sempier v. Johnson & Higgins**, 45 F.3d 724, 732 (3d Cir. 1995), **Bartek v. Urban Redevelopment Auth. of Pittsburgh**, 882 F.2d 739 (3d Cir. 1989), and **Leibensperger v. Carpenter Techs., Inc.**, 152 A.3d 1066, 1076 (Pa. Cmwlth. 2016), respectively).

The trial court further observed that Temple's actions were not facially invidious. TCO at 13. The trial court's analysis is thorough, logical, and supported by the record, and we see no assailable reason for granting a new trial. **See Talbert**, 129 A.3d at 545-46. Accordingly, none of Ferraro's claims raised on appeal merit relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/18