J-A10031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARVIN H. GOLD AND BEVERLY H. GOLD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1039 EDA 2020 |
| CATALFANO BROTHERS, LLC  AND CHARLES CATALFANO | : | |

Appeal from the Judgment Entered June 1, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-00144

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 8, 2021**

Appellants, Marvin H. Gold and Beverly H. Gold, husband and wife, *pro se*, appeal from the judgment entered June 1, 2020, in favor of Appellees, Charles Catalfano and his company, Catalfano Brothers, LLC.[1]  We affirm on the basis of the trial court opinion.

The facts and procedural history underlying this appeal are as follows. Appellants own a large barn that they converted into a living space.  Trial Court Opinion, dated August 12, 2019, at 2 (citing N.T., 10/30/2019, at 10).

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purport to appeal from the March 3, 2020, order denying their post-trial motion.  However, an appeal properly lies from the entry of judgment.  ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995).  In the current action, judgment was entered on June 1, 2020, after Appellants' notice of appeal was filed.  We have amended the caption accordingly.

In the summer of 2017, they noticed that a section of the barn's wall would leak during heavy storms.  *Id.* (citing N.T., 10/30/2019, at 10).  Appellants contacted Appellees for an estimate.  *Id.* (citing N.T., 10/30/2019, at 14).

> In July 2017, [Appellants] entered into a contract with [Appellees].
>
> The contract was to repair leaks in the roof of [Appellants'] converted barn wherein [Appellants] would pay [Appellees] One Thousand, One Hundred, and Ten Dollars [($1,110.00)].[1]
>
> > [1] Exhibit A to Plfs Complaint.
>
> [Appellants] contracted to do the following:
>
> > a. "Remove siding and caulk about 14' of siding
> >
> > b. Supply & Install flashing around window as needed
> >
> > c. Supply & Install flashing on roof as needed
> >
> > d. Supply & Install flashing on roof as needed
> >
> > e. Supply & Install Tyvek on wall
> >
> > f. Seal Tyvek to existing wall with Tyvek tape
> >
> > g. Reinstall j-channel around window
> >
> > h. Reinstall siding".[2]
> >
> > > [2] *Id.*
>
> At no point did [Appellants] agree or guarantee that any work provided would fix the source of the leak.
>
> Mr. Gold, himself a contractor, was unable to do the work nor inspect the completed work at the time of service, due to a medical condition.
>
> When the medical condition was healed, [Appellants] inspected the work and [were] dissatisfied with the results.
>
> [Appellants] contacted [Appellees] and expressed [their] dissatisfaction with the repairs, and claimed that [Appellees were]

required to repair the source of the leak.[2]  The parties were unable to agree as to [Appellees'] continuing obligations and [Appellants] filed this suit.

On July 22, 2019, the case was heard at an Arbitration Hearing.

At Arbitration, the Arbitrators found in favor of [Appellees], holding them not liable for any damages.

On August 12, 2019, [Appellants] filed an appeal of the Arbitration decision.

Th[e trial c]ourt held a non-jury trial on October 30, 2019.

Trial Court Opinion, dated March 3, 2020, at 2-3.  At the conclusion of the trial, the court entered an order and opinion in favor of Appellees, finding that they did not breach their contract for repair of the leak in Appellants' barn nor violate the Home Improvement Consumer Protection Act ("HICPA")[3] or the Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[4] when Appellees suggested that Appellants replace all of the siding on their barn to repair the leak at issue.  Trial Court Opinion, dated August 12, 2020, at 1-2. Appellants filed a post-trial motion, which the trial court denied on March 3,

---

[2] Mr. Catalfano visited Appellants' property and discovered a new leak above the roof at the siding and at the J-Molding, where the siding met the window. Trial Court Opinion, dated August 12, 2020, at 5 (citing N.T., 10/30/2019, at 42).  Mr. Gold later repaired the leak by locating an area that was missing silicon caulk and caulking it.  *Id.* at 8.

[3] 73 P.S. §§ 517.1–517.18.

[4] *Id.* §§ 201-1 to 201.9.3.

2020.  On April 20, 2020, Appellants filed this timely[5] appeal,[6] presenting the

following issues for our review:

> 1.     In a contract dispute between a homeowner and a home improvement contractor, did the [t]rial [c]ourt reach findings of fact which were manifestly contrary to and inconsistent with both [Appellants'] competent evidence and [Appellees'] competent testimonial admissions?
>
> 2.     When a professional roofer admitted intentionally not finding the obvious cause of a roof leak and not effecting the appropriate simple repair of that leak and instead proposed an unnecessary $24,000.00 repair, was the [t]rial [c]ourt's finding that [Appellees] had not violated either [HICPA] or [UTPCPL] so at odds with the evidence and/or so contrary to Appellate Law as to render those findings manifestly erroneous/arbitrary and capricious and/or flagrantly contrary to the evidence and/or an abuse of judicial discretion.  **See Rissi v**[**.**] **Cap**[**p**]**ella**, 918 A.2d 131 ([Pa. Super.] 2007) (a case involving the Trial Judge in this matter, the Honorable Robert J. Mellon).

Appellants' Brief at 3-4 (trial court answers omitted).

_____

[5] Appellants filed their notice of appeal 18 days beyond the allowable 30-day timeframe provided by Pa.R.A.P. 903(a).  However, on March 15, 2020, the Supreme Court of Pennsylvania declared a general, statewide judicial emergency due to the Coronavirus disease 2019 ("COVID-19") pandemic.  **See In re: General Statewide Judicial Emergency**, 228 A.3d 1281 (Pa. 3/16/20) (*per curiam*).  The Supreme Court suspended "all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines."  **See id.**  Indeed, the High Court specified thereafter:  "Legal papers or pleadings…which are required to be filed between March 19, 2020 and May 8, 2020, generally shall be deemed to have been filed timely if they are filed by the close of business on May 11, 2020.  **In re: General Statewide Judicial Emergency**, 230 A.3d 1015 (Pa. 4/28/20) (*per curiam*).  As the Supreme Court's orders extended Appellants' filing date to May 11, 2020, their notice of appeal, dated April 29, 2020, is timely.

[6] On May 26, 2020, Appellants filed their statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On August 12, 2020, the trial court entered its opinion pursuant to Pa.R.A.P. 1925(a).  Judgment was entered on June 1, 2020.

However, in a reply brief filed on March 10, 2021, and before this Court during video oral argument held on May 20, 2021, Appellants withdrew their allegations of consumer fraud, in the form of a violation of HICPA and/or UTPCPL. Appellants' remaining issue therefore is whether the trial court erred in its determination that Appellees did not breach their contract for the repair of a leak in Appellants' barn.

Our standard for reviewing non-jury verdicts is as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

*Ferraro v. Temple University*, 185 A.3d 396, 401 (Pa. Super. 2018) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned Pa.R.A.P. 1925(a) opinion of the Honorable Robert J. Mellon, we conclude that Appellants' issue merits no relief. We determine that the findings of the trial court are supported by competent evidence and that the trial court did not err in any application of the law. *Ferraro*, 185 A.3d at 401. In its Pa.R.A.P. 1925(a) opinion, the trial court comprehensively discusses and properly disposes of Appellants' question.

*See* Trial Court Opinion, dated August 12, 2020, at 5-6 (finding, *inter alia*, that Appellees did not break their contract, because the contract set forth siding repair specifications, which Appellees performed, as promised).

Accordingly, we affirm on the basis of the trial court's Pa.R.A.P. 1925(a) opinion. The parties are instructed to attach that opinion in any filings referencing this Court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/08/2021

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL ACTION LAW

| | | |
|---|---|---|
| MARVIN H. GOLD and<br>BEVERLY H. GOLD | : | |
| | : | |
| v. | : | No. 2018-00144 |
| | : | |
| CATALFANO BROTHERS, LLC, and<br>CHARLES CATALFANO | : | |

## OPINION

Plaintiffs, Marvin and Beverly Gold appeal this Court's Verdict entered in favor of Defendants. This Court found Defendants did not breach their contract for the repair of a leak in Plaintiffs' barn. Additionally, the Court held that Defendants did not violate the Unfair Trade Practices and Consumer Protection Law nor the Home Improvement Consumer Protection Act when Defendants suggested that Plaintiffs replace all of the siding on their barn to repair the leak at issue.

## FACTUAL HISTORY

This case arises Defendant, Catalfano Brothers, LLC and its owner and operator Charles Catalfano's repairs made to a converted barn.[1] Plaintiffs claim the repairs were not done properly and the leak at issue was not remedied.[2] Plaintiffs alleged that Defendants breached their contract, and violated both the Home Improvement Consumer Protection Act and the Unfair Trade Practices

---

[1] See Plf's Complaint.
[2] See Plf's Complaint.

1

Consumer Protection Law.[3] A non-jury trial was held on October 30, 2019. The Court found in favor of Defendants holding that Defendants had no liability.[4]

Plaintiffs, Marvin Gold and Beverly Gold (collectively, "Plaintiffs") own a large barn that they converted into a living space.[5] In the summer of 2017, Plaintiffs noticed that a section of their wall would leak when a strong rainstorm occurred.[6] Gold contacted Charles Catalfano ("Catalfano"), owner and operator of Catalfano Brothers, LLC ("Catalfano Brothers") to get an estimate.[7] The Parties had a working relationship, as Catalfano Brothers installed a roof on Marvin Gold's law firm a few years prior.[8]

Catalfano visited the barn to examine the source of the leak.[9] Upon examination, he determined that the most likely cause of the leak was water getting behind the siding attached to the wall under a "lean-to" roof.[10] Catalfano submitted an estimate for the work he believed most likely to remedy the leak. The estimate provided that Catalfano Brothers would:

- "Remove siding and caulk about 14' of siding

- Supply & Install flashing around window as needed

- Supply & Install flashing on roof as needed

- Supply & Install Tyvek on wall

- Seal Tyvek to existing wall with Tyvek tape

- Reinstall j-channel around window

---

[3] Id.
[4] Civil Court Sheet 10/30/19 (Verdict entered in favor of Defendants).
[5] Notes of Testimony "N.T." 10/30/19 10:15.
[6] N.T. 10/30/19 10:15.
[7] N.T. 14:11-23.
[8] N.T. 10/30/19 10-30-19 14:23.
[9] N.T. 10/30/19 45:15.
[10] N.T. 10/30/19 45:15.

2

- Reinstall siding"[11]

On August 7, 2017, the estimate was accepted by Plaintiffs when they paid a deposit for one-third of the value of the work, Three Hundred and Sixty Seven Dollars ($367.00). The total value of the work to be performed was One Thousand One Hundred Dollars ($1,100.00). The contract included a ten (10) year warranty on all work performed by the company. On September 29, 2017, Catalfano sent a crew to the property to attempt to fix the leak. Catalfano's crew performed the following: they removed fourteen (14) feet of siding, installed flashing around the window, and installed a Typar vapor barrier around the window.[12] There was no Tyvek/Typar vapor barrier behind the siding, which is the standard practice. Installing a vapor barrier was not an item in the August 7, 2017 contract.

On October 13, 2017, Plaintiffs paid the remaining balance on the contract of Seven Hundred and Forty Three Dollars ($743.00).

On October 29, 2017 there was a leak during a severe rainstorm.[13] This prompted a series of emails exchanged between the parties. Marvin Gold expressed his dissatisfaction with the work performed by Catalfano's crew.[14] Catalfano contended that he performed the work under the contract. Catalfano recommended that a complete re-siding of the barn was required.[15] Gold disagreed with this solution and asked why Catalfano's warranty did not cover this[16]. Catalfano represented that the warranty was for the work performed and that the problems causing the leak were outside the scope of work under the contract. Further, Catalfano's work under the contract

---

[11] Estimate from Catalfano Brothers, 7/21/17, Ex. A to Plf's Complaint.
[12] N.T. 10/30/19 43:19-22.
[13] N.T. 10/30/19 21:8-9.
[14] N.T. 10/30/19 29:19-30:4.
[15] N.T. 10/30/19 29:19-30:4.
[16] N.T. 10/30/19 29:19-30:4.

3

was not the cause of the leak.[17] Catalfano informed Gold that the only way to fully repair the leak would be to re-side the barn with Typar/Tyvek.[18]

After several exchanges, Marvin informed Catalfano of his intent to file suit.[19] Plaintiffs filed this lawsuit alleging Breach of Contract, Violation of the Home Improvement Consumer Protection Act, and Violation of the Unfair Trade Practices Consumer Protection Law.[20] A non-jury trial was held in front of this Court on October 30, 2019 where the Court entered a Verdict in favor of Defendants.[21]

## APPEAL

On April 20, 2020, Plaintiffs filed their Notice of Appeal. On April 21, 2020, Plaintiffs were ordered to file a Concise Statement of Errors Complained of on Appeal. On April 27, 2020 Plaintiffs filed a Petition for Additional Time to File their Concise Statement of Errors Complained of on Appeal. On May 4, 2020, Plaintiffs Petition was granted, and Plaintiffs were given Twenty One (21) days from the filing of the transcript of the Trial to file their Concise Statement. On May 26, 2020 Plaintiffs filed their Concise Statement of Errors Complained of on Appeal. Plaintiffs allege that the Court erred in finding in favor of Defendants at trial.

[17] N.T. 10/30/19 29:19-30:4.
[18] N.T. 10/30/19 29:19-30:4.
[19] N.T. 10/30/19 29:19-30:4.
[20] See Plf's Complaint.
[21] Civil Court Sheet 10/30/19.

4

## DISCUSSION

**Defendants did not breach their contract as they performed the work performed that was promised.**

Plaintiffs aver that the Court's Verdict was contrary and inconsistent with the evidence presented at trial. Gold argued that the scope of work under the contract was to do whatever necessary to fix the leak.[22]

The contract set forth siding repair specifications to repair the leak. Supplying and installing flashing on around the window and on the roof was to be done on an as needed basis. At no point in the contract does it state that the repairs were guaranteed to fix the leak. Based upon Catalfano and his crew's experience in construction, they proposed these repairs because they believed they would fix the leak.

Catalfano visited Plaintiffs' property and diagnosed that the new leak was "caused by a leak above the roof at the siding or at the J-Molding or where the siding met the windows."[23] The J-Channel could not be removed and reinstalled because the siding is over thirty (30) years old, and upon inspection, Defendants determined it was too fragile to remove.

Defendants diagnosed the cause of a leak in thirty (30) year old siding. This was complicated upon Catalfano's first inspection of the barn because the leak only appeared under certain weather conditions. The services in the contract were a list of services that could be performed to potentially repair the leak. When Defendants began work on the property, they exercised their professional judgment and made the repairs that they thought necessary to remedy the leaks. Defendants diagnosed the problem as water getting in at the top of the wall and then

---

[22] Plf's Concise Statement of Errors Complained of on Appeal, Paragraph 4.
[23] N.T. 10/30/19 42:8-12

5

running behind the wall because there was no vapor barrier behind the siding, then installed Typar in the area with the leak. Typar is a plastic-like material that is typically installed behind siding as a barrier to prevent water from getting behind siding. Catalfano and his crew believed this would remedy the leak.

The contract called for the use of Tyvek for the barrier while Defendants used the Typar brand. Typar is a comparable product that has the same purpose as Tyvek. Both are vapor barriers that are installed behind siding to keep water from leaking through the siding and into the wall. While Defendants should not have deviated from the brand of vapor barrier specified in the contract, the substitution did not have any material effect on the repair. Since the leak was actually coming from a part of the barn missing caulk, the use of Typar over Tyvek was immaterial to the success of Defendants' repairs. The Court acknowledges that Defendants should have used the brand of vapor barrier explicitly set forth in the contract, however the substitution had no effect on the outcome of this case.

Defendants contracted with Plaintiffs to make repairs as needed to fix what was believed to be the cause of the leak. Defendants performed that work. Since Defendants were not familiar with the barn and had to diagnose where the leak was coming from, they could not and did not guarantee that their work would fix the leak. It would be unreasonable to expect a One Thousand and One Hundred Dollar ($1,100.00) contract to contain a guarantee that Defendants would find and repair the leak with complete accuracy.

**Defendants' recommendation to replace the siding on Plaintiffs' leaking wall was not a violation of the Unfair Trade Practices Consumer Protection Law or the Home Improvement Consumer Protection Act.**

In their Concise Statement of Errors Complained of on Appeal, Plaintiffs aver that the Court erred by not finding that Defendants violated the Unfair Trade Practices Consumer Protection Law ("UTPCPL") and the Home Improvement Consumer Protection Act ("HICPA").[24]

A contractor violates HICPA when:

"With intent to defraud or injury anyone . . . the actor . . . Makes a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price."[25]

A contractor violates UTPCPL when they:

"Knowingly misrepresent that services, replacements or repairs are needed if they are not."[26] Further it is a violation for a contractor to: "Engage in any other fraudulent or deceptive conduct which creates a likelihood of confusion or a misunderstanding".[27]

These statutes both require the contractor act with intent. HICPA requires fraud to be committed with intent, and the UTPCPL requires that the actor act "knowingly".

Defendants did not violate HICPA. There was no evidence of intent by Defendants to fraudulently induce Plaintiffs into paying for an expensive re-siding. After their initial attempt at

---

[24] Plf's Concise Statement of Errors Complained of on Appeal.
[25] 73 P.S. § 517.8(a)(1).
[26] 73 P.S. § 201-2(4)(xv).
[27] 73 P.S. § 201-2(4)(xxi).

repairing the leak proved unsuccessful, Catalfano informed Plaintiffs that his recommendation to fix the leak would be to re-side the wall with the leak and install a Tyvek/Typar barrier behind the siding. Such a large undertaking would cost an estimated Six Thousand Dollars ($6,000.00). The new siding would not match the rest of the barn, therefore, Plaintiffs may have wanted all of the siding replaced. This would increase the costs to an estimated Twenty Four Thousand Dollars ($24,000.00).

Plaintiffs aver that this estimate violated HICPA and UTPCPL because the leak was repaired at a later date by locating an area that was missing silicon caulk and caulking that area. However, nothing in the evidence suggests that Defendants were intentionally attempting to mislead or misrepresent their position to Plaintiffs. Defendants went to the barn, analyzed the leak, and made the repairs that they believed would fix the leak. Defendants could not test the repairs they made, as the barn only leaked in certain storms. Typar/Tyvek is installed behind siding as a standard practice and since Catalfano knew that the barn did not have this barrier, he suggested that installing Tyvek/Typar on the whole of the barn could fix the leak. The barn was built in 1886 and the siding was thirty (30) years old.

In light of the barn's age and the uncertainty regarding the cause of the leak, Catalfano's suggestion to re-side the house was not done with the intent to mislead or deceive Plaintiffs into paying Defendants to do a large construction project. Catalfano, on the advice of his crew who performed the work, recommended new siding as a way to prevent any more water from getting into the barn. The siding that was on the barn was thirty (30) years old and had no Tyvek/Typar affixed between the siding and the wall. The use of Tyvek/Typar is now common practice when installing siding. There was no evidence that Defendants made false or misleading statements to induce Plaintiffs into re-siding their barn. Further, Catalfano did not misrepresent that the siding

8

repair was needed. Based on his experience and the recommendation of his crew, Catalfano thought that the best way to repair the leak was to re-side the home with the Tyvek/Typar barrier in place. While the leak was repaired at a significantly lower price, there was no evidence that Defendants' acted with intent in any way that violated HICPA or UTPCPL. This was simply a case of Catalfano recommending what he felt was the most foolproof way to prevent the leak.

The Court did not err in making this determination, as Plaintiffs failed to present sufficient evidence that Defendants' suggestion to re-side the wall was made in a false, misleading, or fraudulent manner. While Defendants' suggested plan to fix the leak eventually proved to be unnecessary, no evidence was presented that this suggestion was made with any intent to defraud or mislead Plaintiffs. Therefore, this Court did not err in finding that Defendants did not violate HICPA or UTPCPL.

## CONCLUSION

For the foregoing reasons, the Court did not err in entering its Verdict in favor of Defendants.

DATE: 8/12/2020

BY THE COURT:

ROBERT J. MELLON, J.

9