J-A20011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| J.R. ENTERPRISES LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARTMAN SNACK GROUP INC | : | No. 75 MDA 2023 |

Appeal from the Judgment Entered February 17, 2023
In the Court of Common Pleas of Franklin County
Civil Division at No(s): 2017-00460

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:        **FILED: DECEMBER 5, 2023**

J.R. Enterprises LLC appeals from the judgment entered in favor of Hartman Snack Group Inc. J.R. argues that the trial court erred in concluding Hartman did not breach its contractual obligations. We affirm.

J.R. is a trucking and distribution business based in Chambersburg, Pennsylvania. Wilber Truett is the sole member of J.R. Hartman is a snack food products manufacturer based in Chambersburg. In April 2014, Hartman and J.R. entered into a written agreement,[1] which allowed J.R. to purchase snack food products from Hartman and distribute them to stores in an agreed-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court noted that neither party produced the signed agreement at trial, but an unsigned agreement was entered into evidence and both parties agreed as to the accuracy of the contents of this document. **See** Trial Court Opinion, 12/14/22, at 2 n.1.

upon area. The agreement specified that J.R. would buy products from Hartman and Hartman would compensate J.R. on the terms and prices contained on price lists created by Hartman approximately every quarter. More specifically, J.R. would be paid a percentage per product which was calculated based upon how much the store paid for and sold the product. Moreover, under the agreement, J.R. would bill Hartman for administrative fees, damaged or stale goods, delivery costs, and marketing displays. The agreement did not specify the frequency of payments or when the payments would have to be made.

J.R. distributed Hartman's products to larger retailers ("centrally billed accounts") and smaller stores. The centrally billed accounts would receive inventory from J.R., but paid Hartman directly. In turn, Hartman would issue credits to J.R.'s account and subsequently issue payment to J.R. With regard to smaller retailers, J.R. would be paid directly for such sales and did not provide invoices for the sales. J.R. serviced approximately 20 such stores; pertinently, Hartman was not aware of the identity of the smaller stores.

In 2015, Hartman entered into a partnership with Utz Quality Foods to distribute its products. As such, Hartman notified J.R. that it was terminating their agreement effective February 28, 2016. In exchange for a successful termination of the agreement, the notice of termination offered to pay J.R. a bonus payment of 2% of its 2015 sales if J.R. provided Hartman specific information about its accounts and continued performance through the last

day of the agreement. J.R. only provided Hartman information on four smaller store accounts, despite having over 20 accounts of this nature. Hartman issued a final payment in May 2016.

Dissatisfied with the final payment, J.R. consulted with a certified public accountant, Randy Zook, to review statements and invoices to determine whether J.R. was due any further money from Hartman. J.R. informed Zook that it purchased Hartman's products; J.R. was entitled to a 28% markup for all of Hartman's products that it had purchased; Hartman invoiced J.R. for stale and damaged products; and the smaller stores paid an estimated $1,200 per week for distribution of Hartman's products. Utilizing the evidence provided by J.R., Zook opined that Hartman owed J.R. $74,240 between the initial 2014 agreement and the offer contained in the termination letter. Hartman refused to pay J.R. this money.

On February 3, 2017, J.R. filed a complaint against Hartman, raising breach of contract claims arising out of the 2014 agreement and the termination letter. Hartman filed an answer with new matter, and J.R. filed an answer to the new matter. The trial court then held a non-jury trial, at which Truett, Zook, and Amy Hartman, an owner of Hartman, testified. Ultimately, the trial court ruled in favor of Hartman, finding that J.R. had not established a breach of contract or any damages due. J.R. filed a motion to reconsider, which the trial court denied. This timely appeal followed.

On appeal, J.R. raises the following questions for our review:

1. Did the trial court err by entering an order that contradicts the evidence presented at trial?

2. Did the trial court err by finding that [J.R.'s] damages were inaccurate and/or too speculative, such that [J.R.] failed to prove its damages within the requisite degree of certainty?

3. Did the trial court err by finding that there were additional terms in a secondary contract between the parties regarding a "bonus" payment, when [Hartman] produced no evidence of any such additional terms at trial?

Appellant's Brief at 2-3.

All three of J.R.'s issues challenge the trial court's verdict. Our standard of review of such challenges depends on the exact nature of the challenge:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation, brackets, and ellipses omitted).

Additionally, "[w]hen reviewing a verdict in a non-jury trial, this Court will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the trial court's determination

- 4 -

was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence." ***El-Gharbaoui v. Ajayi***, 260 A.3d 944, 965 (Pa. Super. 2021) (citation, quotation marks, and brackets omitted). "Questions of the weight of the evidence are solely the province of the fact-finder—here, the trial court— who is free to believe or to disbelieve any evidence it chooses. We cannot and will not re-weigh the evidence nor re-assess the credibility of the witnesses." ***Ferraro v. Temple Univ.***, 185 A.3d 396, 406 (Pa. Super. 2018) (citations omitted). "The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***El-Gharbaoui***, 260 A.3d at 965-66 (citation omitted)

We will review J.R.'s first two claims together. J.R. argues that the trial court's judgment contradicts the evidence presented at trial. ***See*** Appellant's Brief at 10, 15-16; ***see also id.*** at 17-18 (noting that the trial court made no finding that J.R.'s witnesses were incredible, and instead asserting that the trial court misapplied the evidence in a manner which contradicted J.R.'s testimony and evidence). J.R. argues that Zook's uncontroverted testimony established that Hartman breached the terms of 2014 agreement and owed J.R. $63,480 for its sales of Hartman's inventory. ***See id.*** at 11, 13-14, 15-17; ***see also id.*** at 29-30 (arguing that the trial court's finding that Zook's calculation of damages was inaccurate was against the weight of evidence).

J.R. also contends that the trial court erred in finding that it failed to prove damages to a requisite degree of certainty. *See id.* at 18. J.R. asserts that Zook's calculations of damages was complete and final and Zook testified that his conclusions were supported by the evidence. *See id.* at 28-30. J.R. maintains that the "evidence established that all charges to J.R.'s account—price adjustments, stale or damaged goods, administrative charges, et cetera—were all reflected in the statement sheets and were therefore incorporated into [] Zook's calculations, and these items did not skew the results or 'artificially inflate" [its] damages." *Id.* at 29; *see also id.* at 16-17, 19. Further, J.R. argues that the use of a 28% profit margin in calculating damages was an accurate representation of J.R.'s profits, noting this was an average of its varied profit margins on each item sold. *See id.* at 20-24.

While conceding there was no supporting documentation, J.R. also argues that the $1,200 weekly sales for the smaller retailers was a reasonable estimate. *See id.* at 25-28. J.R. emphasizes that Zook had extensive experience doing accounting for distributors and small businesses, and his professional opinion was that business the size of J.R. reasonably could have had $1,200 in sales per week. *See id.* at 26.

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d

646, 657 (Pa. Super. 2016) (citation omitted). "[D]amages in a breach of contract action must be proved with reasonable certainty. Otherwise, they are generally not recoverable." **Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Fam. Mkt., Inc.**, 98 A.3d 645, 661 (Pa. Super. 2014) (*en banc*) (citations omitted).

The trial court correctly found that Hartman did not breach the 2014 agreement. **See** Trial Court Opinion, 12/14/22, at 6 (footnote omitted). Likewise, the trial court correctly concluded that J.R. has not proven damages with any reasonable certainty. **See** Trial Court Opinion, 12/14/22, at 7-8. We agree with the sound reasoning of the trial court and affirm on this basis. **See id.** at 6-8.

Here, the trial court specifically found Zook's calculations to be "founded on inaccurate and incomplete information." **Id.** at 7. To that end, the parties admit that the 2014 agreement established that J.R. would buy product from Hartman at prices set forth on the "price list." **See** Agreement, at ¶¶ 5, 7(a). Truett testified Hartman provided the "price list," which set forth how much J.R. would sell the product to the store for and how much it would be paid for each product. **See** N.T., 9/27/22, at 15-16. Truett specifically stated that J.R. would get paid the difference between purchasing the product and selling the product. **See id.** at 15-17. Truett admitted that when determining how much Hartman owed under the 2014 contract, he averaged the price markup between the different purchase and sale prices, and determined the average

to be a 28% markup. *See id.* at 17. However, each product on the "price list" has its own specific markup and there is no evidence in the record indicating how many of each item was sold. Notably, Truett's general average does not account for the price J.R. paid. In fact, Amy Hartman testified that J.R. bought products at a promotional distributor cost, and only some of the stores sold the products at a promotional store cost. *See id.* at 102-03, 124, 126.

On appeal, J.R. merely seeks to have this Court reweigh the evidence in a light most favorable to it, and find Zook's testimony and calculations to be credible.[2] We decline J.R.'s invitation to do so, as the trial court, the fact-finder in this case, resolved the credibility of the witnesses, and this Court is not permitted to re-examine those determinations or substitute our judgment for that of the trial court. *See Ferraro*, 185 A.3d at 406. The evidence credited by the trial court established that Hartman did not breach the contract and J.R. does not cite to any evidence to rebut the trial court's finding that the calculation of damages was flawed. In light of the record before us, we discern no abuse of discretion on the part of the trial court based upon Appellants' claim that the verdict was against the weight of the evidence. *See El-Gharbaoui*, 260 A.3d at 966 (declining appellant's argument to reassess the

_____

[2] Although J.R. labelled its post-trial motion as a motion to reconsider, it raised claims regarding the weight the trial court afforded the evidence; hence, we decline to find waiver of the weight claim. *See, e.g., Bensinger v. Univ. of Pittsburgh Medical Center*, 98 A.3d 672, 685 (Pa. Super. 2014) (concluding that a challenge to the weight of the evidence is waived if not raised in a post-trial motion).

credibility of witnesses to reach a result different from the trial court). Therefore, J.R.'s claims regarding the 2014 agreement are without merit.

Finally, J.R. contends that the trial court improperly found that the contract formed out of the termination letter had additional terms that prevented any recovery here. *See* Appellant's Brief at 30-38. J.R. highlights that Hartman terminated the initial agreement and agreed to pay an additional 2% on its prior year's sales to ensure a smooth transition to the new distributor, but offered no further terms. *See id.* at 37. J.R. argues that it fulfilled its obligations under the letter and that Hartman is bound by the terms of the offer as communicated. *See id.* at 38.

The trial court addressed J.R.'s claims and determined that they are without merit. *See* Trial Court Opinion, 12/14/22, at 8-10. We conclude that the trial court's reasoning is correct and affirm on this basis, with the following addendum. *See id.* Here, J.R.'s entire argument is premised upon its assertion that it never received the offer letter produced by Hartman, and that therefore the only condition on the 2% payout was that J.R. continue providing services until the contract was terminated. However, the trial court found Hartman's testimony and evidence regarding the terms of the agreement and how they were presented to J.R. credible. As this credibility determination finds support in the record, we cannot overturn it on appeal. As such, J.R.'s admission that it only provided Hartman with four accounts, *see* N.T., 9/27/22, at 66; *see also id.* at 138-39 (wherein Amy Hartman testified that Hartman was not

provided a complete list of smaller store accounts by J.R. after Hartman terminated the agreement), is fatal to its final claim on appeal.

Judgment affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/5/2023

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVNIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| J.R. Enterprises, LLC,<br>Plaintiff | : | Civil Action |
| | : | |
| | : | |
| v. | : | No. 2017-460 |
| | : | |
| Hartman Snack Group, Inc., | : | |
| Defendant | : | Judge Todd M. Sponseller |

OPINION AND ORDER OF COURT

Before Sponseller, J.

| | | | |
|---|---|---|---|
| J.R. Enterprises, LLC,<br>Plaintiff | : | Civil Action | |
| | : | | |
| | : | | |
| vs. | : | | |
| | : | No: 2017-460 | |
| Hartman Snack Group, Inc., | : | | |
| Defendant | : | Judge Todd M. Sponseller | |
| | : | | |

## OPINION

## I. OVERVIEW

The instant matter before the Court involves an action by Plaintiff and against Defendant asserting two separate and distinct breaches of contract. The first alleged breach arises from the terms of a written contract between the parties. The second alleged instance of breach involves an alleged unilateral contract containing an offer by Defendant for Plaintiff to perform. For the reasons set forth herein, we find that Defendant did breach any of its contractual obligations to the Plaintiff and will therefore find for Defendant.

## II. FACTUAL BACKGROUND

Plaintiff J.R. Enterprises, LLC (hereinafter "Plaintiff") is a distributor of snack food products and Wilbur "Rusty" Truett (hereinafter "Truett") is the sole member of the LLC. Defendant Hartman Snack Group, Inc. (hereinafter "Defendant") is a manufacturer of snack foods doing business as Defendant Foods.

Plaintiff and Defendant entered into a contract in April of 2014 wherein Plaintiff was to purchase snack food products from Defendant and distribute them in both large and smaller

stores over a specific, agreed upon territory.[1] The contract provided for the Defendant to sell product to the Plaintiff "on the terms and at the price established by Defendant from time to time as set forth on the price list". See Defendant's Exhibit A; Plaintiff's Exhibit 1 at ¶5. The contract also provided for the Plaintiff to "pay Defendant for all products received, per the prices and terms on the current price list, in accordance with any other agreements made with Defendant ... [t]he invoices and other forms of Defendant, and other agreement between Defendant and (Plaintiff), shall govern the terms of payment for the Products. See Defendant's Exhibit A; Plaintiff's Exhibit 1 at ¶7 (a). The contract incorporated price lists that determined the price of the product to Plaintiff and the price to the account. See Plaintiff's Exhibits 11 and 12. The contract was silent as to the frequency of payment or what account balance triggered payment. As a part of this contract, Defendant billed Plaintiff for product purchased, recurring administrative fees associated with larger accounts, damaged or stale goods for which Plaintiff had already been credited, delivery costs and marketing and display products used by Plaintiff. See Defendant's Exhibit A; Plaintiff's Exhibit 1 at ¶¶4, 5, 8.

The larger stores, called centrally billed accounts, were billed by Defendant and in turn paid Defendant directly. Defendant kept a running tabulation of debits and credits or statement for these centrally billed accounts that set forth invoices, credits and payments issued to Plaintiff. See Defendant's Exhibit E; Plaintiff's Exhibits 4, 5 and 6. Defendant paid Plaintiff periodically for these sales.

The statement does not reflect any of the sales made by Plaintiff to the smaller stores. Throughout the life of the contract, Plaintiff distributed Defendant's products to these smaller

---

[1] Neither party produced a signed and dated copy of the contract at trial, but both parties appear to agree to the form of the writing. See Plaintiff's Exhibit 1; Defendant's Exhibit A.

2

stores and received invoices for these sales, but did not provide these invoices to Defendant. The smaller stores paid Plaintiff directly for these products.

At the end of 2015, Defendant entered into a partnership with Utz Quality Foods for, amongst other things, distribution of its snack foods. See Defendant's Exhibit M hereinafter referred to as "the appreciation letter". In the letter sent to its distributors, including Plaintiff, in "appreciation" for their efforts, Defendant offered to pay distributors 2% of their 2015 annual sales in return for "successful termination" of the contract period (90 days from the date of the letter). This included cooperation in providing Defendant information on specific accounts.

In an email exchange between April 29, 2016 and May 2, 2016 Defendant sought information from Plaintiff regarding the smaller independent accounts that Plaintiff serviced. See Defendant's Exhibit G at pp 3-5. Plaintiff provided the names of four small accounts despite having actually serviced approximately 20 such accounts. Defendant issued final payment to Plaintiff in May of 2016.

Apparently being dissatisfied with Defendant's final payment under the contract, Plaintiff consulted with Randy Zook, a Certified Public Accountant (hereinafter "Zook") to review statements and invoices and determine whether Plaintiff was due any outstanding payments from Defendant. In aid of this consultation, Plaintiff informed Zook of the following: 1) Plaintiff purchased all Defendant's products from Defendant and Defendant invoiced Plaintiff for the product on his statement; 2) Plaintiff was entitled to a 28% mark-up for all Defendant's product purchased; 3) the central billed accounts paid Defendant directly and Defendant then credited Plaintiff on its statements after receipt of invoices for the sales; 4) smaller stores paid Plaintiff directly; 5) Plaintiff was paid an estimated $1,200 per week for distribution to the small stores. See Plaintiff's Exhibit 8; Defendant's Exhibit J. While Plaintiff informed Zook that Defendant

3

invoiced Plaintiff for stale or damaged goods and display merchandise, Zook determined that these costs were immaterial to his analysis and review. Plaintiff evidently did not inform Zook that Defendant invoiced Plaintiff for administrative fees associated with the central billed accounts or that price lists controlled the costs of the product distributed by Plaintiff and therefore its compensation, and not an across the board 28% markup. Apparently the only documentation that Plaintiff supplied to Zook was a copy of the running statement from the beginning of the contractual relationship through March of 2016. Plaintiff provided no other documentation for Zook's review.

Using the information provided by Plaintiff, Zook formulated an opinion, reduced to an email dated June 27, 2016 to Plaintiff's former counsel that Defendant owed Plaintiff $74,240.00 between both the contract and the offer of 2% of the 2015 annual sales. Plaintiff now demands this amount from Defendant.[2]

### III.     PROCEDURAL HISTORY

Plaintiff initiated this matter by filing a Complaint February 2, 2017. Defendant Answered the Complaint on May 17, 2017. Plaintiff moved for a status conference on September 17, 2019 and this Court set the conference for November 8, 2019. Following the status conference, we entered a case management Order on November 18, 2019. Thereafter Plaintiff's counsel was suspended from the practice of law, and Defendant sought a status conference to seek guidance on how to proceed as discovery requests to Plaintiff were pending. By Order dated December 12, 2019 we set another status conference for January 21, 2020. Current Plaintiff's counsel made his appearance on January 16, 2020 and following the January 21, 2020 status conference the Court entered another case management Order. On April 21, 2020 the Court entered an Order enlarging the time set forth in the most recent case management Order. On June 7, 2021, Plaintiff's counsel

---

[2] See Plaintiff's Complaint at its WHEREFORE clause.

4

moved the Court for a pretrial conference. We set the pretrial conference for November 4, 2021 and at the pretrial conference we established a bench trial date for April 11, 2022. Plaintiff moved for a continuance, which we granted and we scheduled the trial for September 27, 2022.

At trial, representatives for both parties testified as did Randy Zook. Following the taking of evidence, the Court Ordered briefs from the parties who timely complied. This matter is now ready for decision.

## IV.      DISCUSSION

Although the Complaint does not contain different counts, Plaintiff proceeds under two separate instances of alleged breach of contract. The first concerns the March 2014 Contract between Plaintiff and Defendant and Defendant's alleged failure to pay in accordance with a purported 28% mark-up for all Defendant's product distributed by Plaintiff.[3] Plaintiff contends that Defendant failed to fully pay for the product distributed and alleges $63,580.00 in damages.[4] Plaintiff also contends that Defendant failed to pay the full amount of the 2% of the 2015 sales pursuant to the "appreciation" letter occasioned by Defendant's partnering with Utz for distribution. Plaintiff asserts that Defendant failed to pay $10,660.00 relative to the letter. Defendant contends that the 28% mark-up is not a contractual obligation as Plaintiff asserts and therefore Plaintiff cannot prove a breach of the agreement and that Plaintiff's calculations as to damages are too uncertain to be recoverable. Further, Defendant contends that Plaintiff failed to perform in accordance with the offer relative to the appreciation letter, and therefore no contract was formed between the parties and Plaintiff is not entitled to be paid pursuant to that letter. We will discuss each of these theories or instances separately.

### a.      Alleged Breach of the 2014 Contract

---

[3] See Plaintiff's Complaint at ¶5.
[4] See Plaintiff's Complaint at ¶8.

5

An axiomatic principle of contract law is that "[T]o successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart v. Arnold*, 884 A.2d 316,332 (Pa. Super. 2005) (add. citations omitted). A breach of contract occurs when a party fails to perform a duty under the contract or "violates an obligation or engagement and that breach is material." *Ratner v. Iron Stone Real Estate Fund I, LP*, 2018 WL 4940333 (Phila. Ct. Com. Pl. 2018); citing *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011). Our appellate courts have held that "damages in a breach of contract action must be proved with reasonable certainty. Otherwise, they are generally not recoverable." *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A3d. 645 (Pa.Super. 2014). We find that Plaintiff failed to meet its burden of proof that a) Defendant breached the Contract and b) that he suffered recoverable damages.

### i. Breach

The parties herein agree that Plaintiff was to be paid for product sold based on the terms of the price list that was in effect at the time of the sale. Plaintiff contends that the price lists provide for "an average of 28% markup on the products it purchases and sold".[5] When Plaintiff consulted with Randy Zook, it provided information that it was to be compensated with an across the board 28% markup. This information was not accurate under the price lists that controlled Plaintiff's compensation and Zook based his calculations on this inaccurate information. Plaintiff cannot substantiate a breach of contract based on a failure to perform a contractual obligation when the Plaintiff has misrepresented the obligation at issue.

### ii. Damages

---

[5] Plaintiff's Findings of Fact and Conclusions of Law at ⁋ 10.

The merits of Plaintiff's claim for damages are based solely on Randy Zook's calculations. Those calculations are founded on inaccurate or incomplete information. Moreover, from the face of the report, it appears that the opinions set forth therein are not meant to be final.

Randy Zook based his calculations of the Plaintiff's gross sales by adding together all the invoices issued to the Plaintiff without making any effort to determine which invoices were associated with inventory that was actually purchased. Plaintiff did not inform Zook about the administrative fees charged by Defendant for the administration of the centrally billed accounts. Accordingly, even if Zook's method of calculating Plaintiff's compensation was correct, the calculations performed with inaccurately high figures for Plaintiff's purported damages.

Furthermore, in performing his calculations, Randy Zook failed to account for reductions to credits for sales made to Ahold Delhaize stores, one of the centrally billed accounts. Ahold Delhaize stores purchased Defendant's products at normal store costs, and not at a promotional store rate as most stores did. Therefore, when Defendant issued credits for sales to Ahold Delhaize stores, it adjusted or reduced them to reflect the discounted rate that at which Plaintiff purchased the product. Zook did not account for these adjustments, which also artificially inflated Plaintiff's damages figures.

Additionally, the evidence presented at trial reflected that Defendant did make payments to Plaintiff for 2016 sales. Randy Zook's calculations failed to account for these payments.

Plaintiff did not provide documentation of his sales to the smaller, direct bill stores to Randy Zook and as a result payment for those sales are absent from Zook's analysis, again adding to the imprecision of his opinions. Furthermore, Plaintiff, who was in sole control of these records, did not provide the complete documentation in response to discovery requests, preventing Defendant from mounting a defense to them.

Finally, Randy Zook's calculations were not complete. Zook set forth his opinions in an email to Plaintiff's prior counsel dated June 27, 2016 wherein he stated that "we are seeking guidance as to our next step which I believe to be verifying the credit memos on the account for missing credits. I do not want to take that step until I receive your viewpoints." See Plaintiff's Exhibit 8; Defendant's Exhibit J. There is no evidence that this next step was taken or the opinions were finalized.

Based on the above, even if Plaintiff was able to prove that Defendant breached its agreement, Plaintiff has failed to prove damages with any amount of certainty. "As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Newman Dev. Grp. of Pottstown*, 98 A.3d at 661 (quoting *Spang & Co. v. U.S. Steel Corp.*, 519 Pa. 14, 545 A.2d 861, 866 (1988)). Here there exist too many inaccuracies or important information was omitted from the damages analysis altogether to allow for reasonable certainty. Accordingly, we find that Plaintiff has failed to prove its damages.

### b.    Alleged breach of the promise to pay 2% of 2015 sales

Plaintiff claims that when Defendant sent its 2016 "appreciation letter" offering to pay 2% of Plaintiff' sales in return for working through Defendant's transition away from independent distributors, Plaintiff's performance in that regard created a contractual obligation to pay that amount or $10,660.00.[6] Defendant claims that Plaintiff failed to fully meet the terms of the offer and therefore no contract was formed.[7]

Foundational contract law recognizes two basic types of contracts- unilateral and bilateral contracts. *See Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 665 (Pa.

---

[6] Plaintiff's Findings of Fact and Conclusions of Law at ¶¶ 23 and 24
[7] Defendant's Proposed Conclusions of Law at ¶ 9

Super. 2014). A bilateral contract consists of two promises and contemplates one party "promis[ing] to do or forbear from doing something in exchange for a promise from the other party to do or forbear from doing something else". *Id.* quoting *First Home Sav. Bank, FSB v. Nernberg,* 436 Pa.Super. 377, 648 A.2d 9, 14 (1994). Unilateral contracts by comparison

> involve only one promise and are formed when one party makes a promise in exchange for the other party's act or performance.Significantly, a unilateral contract is not formed and is, thus, unenforceable until such time as the offeree completes performance.

*Id.* also quoting *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987).

The letter containing Defendant promise to pay independent distributors 2% of their 2015 sales constitutes a unilateral contract- it makes a promise to pay upon the offeree's performance. In this case the letter requested the performance of the "successful termination" of the contract period (90 days from the date of the letter). This included not only servicing customers through the end of the contract period but also required distributors to provide Defendant information on specific accounts. Plaintiff failed to perform this obligation.

In the instant case, Defendant followed up with Plaintiff by requesting, via email, information about specific small direct bill accounts, specifically sought by Defendant. See Defendant's Exhibit G at pp 3-5. In response Plaintiff only provided information as to four of approximately twenty smaller stores to which they distributed.

In an email exchange between April 29, 2016 and May 2, 2016 Defendant sought information from Plaintiff regarding the smaller independent accounts that Plaintiff serviced. Plaintiff provided the names of four small accounts despite having actually serviced

9

approximately 20 such accounts. Accordingly, Plaintiff failed to perform and no contract was formed. Therefore, Plaintiff cannot recover under this theory of breach.

## V.     CONCLUSION

As set forth above, we find, following a trial without jury that Plaintiff has failed to meet its burden that Defendant breached its distribution agreement that it had with Plaintiff. Moreover, we find that Plaintiff failed to meet its burden to prove damages in connection to this alleged breach with reasonable certainty. With regard to the promise to pay 2% of the 2015 sales, we find that because Plaintiff failed to perform, no contract was formed and therefore Defendant had no obligation to pay. Accordingly we find for the Defendant and will Order that judgment be entered in favor of the Defendant and against the Plaintiff. An appropriate Order follows.

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH**

| | | |
|---|---|---|
| J.R. Enterprises, LLC, | : | Civil Action |
| Plaintiff | : | |
| | : | No. 2017-460 |
| vs. | : | |
| | : | |
| Hartman Snack Group, Inc., | : | |
| Defendant | : | Judge Todd M. Sponseller |

## ORDER

AND NOW this 14th day of December, 2022, for the reasons set forth in the foregoing opinion, we find that Plaintiff has failed to meet its burdens of proof, and therefore find in favor of the Defendant Hartman Snack Group, Inc. and against the Plaintiff J.R. Enterprises, LLC. We therefore direct the Prothonotary to Enter Judgment in favor of the Defendant Hartman Snack Group, Inc.

*Pursuant to Pa.R.C.P. 236 (a)(2), (b), (d),, the Prothonotary shall give written notice of the entry of this Order, including a copy of this Order, to each party's attorney of record, or if unrepresented, to each party, and shall note in the docket the giving of such notice and the time and manner thereof.*

By the Court

Todd M. Sponseller, J.

cc:
James M. Stein, Esq. counsel for Plaintiff J.R. Enterprises, LLC
John B. Keller, Esq. Counsel for Defendant Hartman Snack Group, Inc.